UNITED STATES of America, Appellee,

v.

**Edward K. SAVIDES, Defendant, Appellant.**

No. 85–1552.

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1986.

Decided April 2, 1986.

Jack I. Zalkind with whom Harry C. Mezer, Boston, Mass., was on brief, for defendant, appellant.

C. Brian McDonald, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Circuit Judge, ROSENN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

This appeal from a three-count conviction of income tax evasion raises two issues: whether the grand jury which indicted the defendant was selected in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869; and whether the sentencing procedure was improper.

* Of the Third Circuit, sitting by designation.

THE SELECTION OF THE GRAND JURY

At the outset of our discussion we reject the government's contentions that defendant's motion to dismiss the indictment should be denied because it was not timely filed pursuant to 28 U.S.C. § 1867(a) or because of the failure to file a sworn statement in support of the motion as required by 28 U.S.C. § 1867(d). We agree with the magistrate that defense counsel proceeded with due diligence and that the sworn statement requirement of § 1867(d) was met. We turn to the merits of defendant's challenge.

28 U.S.C. § 1867(a) provides:

In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of *substantial failure* to comply with the provisions of this title in selecting the grand or petit jury. [Emphasis added.]

Defendant's challenge focuses on the jury selection process for filling the master jury wheel in 1980 in the Western Division of the District of Massachusetts. The determination of whether there has been a "substantial failure to comply" requires a review of the pertinent provisions of the Act.

The Act declares:

It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. Under § 1862, no one can be excluded from jury service "on account of race, color, religion, sex, national origin or economic status."

In order to accomplish these objectives, Congress directed in § 1863(a) that each district court "devise and place into operation a written plan for random selection of grand and petit jurors." Section 1863(b) specifies the basic requirements for the plan. Subsection (b)(1) requires that the plan "either establish a jury commission, or authorize the clerk of the court, to manage the jury selection process." Subsection (b)(2) requires that jurors be drawn from voter registration lists or lists of actual voters supplemented by another source if necessary to foster the policy and purpose of the Act. Subsection (b)(3) requires that the district court plan "specify detailed procedures" to be followed by the clerk to ensure a random selection of jurors from a fair cross section of the community. Under (b)(4), a master jury wheel containing the names of potential jurors must be provided and the basic requirements for the operation of the wheel are established.

The plan adopted by the District Court of Massachusetts fully complies with the Act.[1] Section 3(B) provides that, subject to the general supervision of the Chief Judge or the emergency judge, "the Clerk of Court shall manage the jury selection process." It also allows the clerk to "authorize a deputy clerk to act for him in performing strictly ministerial non-discretionary functions." Under § 4(A), the district court found that the Massachusetts voting lists represented a fair cross section of the community for the district and made them the source for jurors. Section 4(B) prescribes the method for making the random selection of names to be placed in the master jury wheel. Since defendant claims that the process actually followed for filling the master wheel did not conform to the requirements of § 4(B) we set them forth in full.

(B) The Clerk shall employ the following method in making the random selection of names to be placed in the Master Jury Wheels, in order that each city and town shall be represented in proportion to the number of names on its voting list. The Clerk shall divide the total number of names on the voting lists in each division by the number of names to be placed in the Master Wheel. The resulting number shall be the quotient figure. The Clerk shall draw by lot a starting number from one to the quotient figure. The Clerk shall use the numbers drawn to select the correspondingly numbered names from the voting list. (For example, if the quotient figure is 100, and the starting number drawn by lot between one and 100 is 68, then the Clerk shall select from the voting list first the 68th name, then the 168th name and so forth.) If the starting number drawn by lot is larger than the number of persons on the voting list, then the Clerk shall select the last name of the voting list, it being numerically closest to the starting number.

We now examine the actual process by which the jurors for the 1980 master jury wheel were selected. A direct mail company, Bellamy Associates, was hired by the clerk's office to assist in filling the wheel. Bellamy mailed out juror questionnaires to persons selected in the following manner from the voter lists. The clerk's office furnished Bellamy with all the voter registration lists for the Western Division of the court. Bellamy was also given the starting number and quotient number so it could determine to whom the questionnaires were to be sent. The starting number had been drawn out of a hat by the clerk. The quotient number had been selected by the clerk, in accord with the plan, by dividing the total number of names on the voter lists by the number of names to be placed in the master wheel. Using the starting and quotient numbers furnished by the clerk, the employees of Bellamy went

---

**1.** The Massachusetts Plan was revised July 28, 1980, and the revision adopted on September 19, 1980.

through the voter lists and selected the names to whom juror questionnaires were mailed.[2] The jury supervisor for the court, William Ruane, Jr., visited Bellamy at least twice during the selection process and found that it was being conducted properly.

After Bellamy completed the questionnaire mailings, the voter registration lists were returned to the clerk's office with the names of the persons selected for mailing circled. No one at the clerk's office reviewed the registration lists after they were returned. The 1980 voter lists could not be located and the government concedes that they are not available.

There can be no doubt that the use of a commercial mailing firm to select the names of potential jurors, with only sporadic supervision by the clerk of court, was a violation of the Act and the Massachusetts Jury Selection Plan.[3] The question is whether this selection process constituted a "substantial failure to comply" with the Act. A substantial failure is one that contravenes one of the two basic principles of the Act: (1) random selection of jurors, and (2) determination of juror disqualification, excuses, exemptions, and exclusions on the basis of objective criteria. Technical violations, or even a number of them, that do not frustrate the random selection and cross section requirements and do not result in discrimination and arbitrariness do not constitute a substantial failure to comply. *United States v. Gregory,* 730 F.2d 692, 699 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1170–71, 84 L.Ed.2d 321 (1985); *United States v. Bearden,* 659 F.2d 590, 600–01 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982).

In *United States v. Foxworth,* 599 F.2d 1, 3 (1st Cir.1979), we set forth the test for showing a substantial failure to comply with the random-selection and cross-section requirements of the Act:

> In order to demonstrate a violation of the statutory "fair cross section" standard, a defendant must show that a "distinctive" group, that is, a "cognizable" group, was excluded from the jury selection process; that such group was "systematically excluded"; and that because of such exclusion the jury pool failed to be "reasonably representative" of the community. *United States v. Test,* 550 F.2d 577, 585 (10th Cir.1976).

*See also United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 968, 83 L.Ed.2d 972 (1985).

Defendant had an opportunity to review all the returned juror questionnaires and investigate the composition of the pool from which the grand jury that indicted him was drawn. He has made no showing that prospective jurors were selected from the voter lists in a nonrandom manner. Nor has he shown that a cognizable group was excluded from the jury selection process or that any distinctive group was significantly underrepresented on the jury lists. *See United States v. Hafen,* 726 F.2d 21, 23 (1st Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984). Defendant's argument boils down to this. Because of the lack of direct ongoing supervision by the clerk, the employees of the mail firm had an opportunity to err in the selection process or to exercise discretion by favoring or discriminating against a group which could be identified from the voter registration lists—women and those with Hispanic names. The opportunity for nonrandom selection and/or discrimination plus the violation of the Act and the disappearance of the voter lists, defendant contends, amounts to a substantial violation requiring a dismissal of the indictment.

There is, however, no evidence that there was either inadvertent or deliberate deviation from the selection process formulated by the clerk of court. In fact, the evidence is to the contrary. The two times that the clerk checked the selection process it was being carried out correctly. The supervi-

---

**2.** See example in § 4(B) for the mechanics of the selection process.

**3.** This practice has been discontinued.

sor for Bellamy, Richard Curran, understood fully how the potential jurors were to be selected from the voter lists and personally observed the selection process as it was carried out. We cannot assume without more that a commercial mail firm would either negligently or deliberately break the terms of its contract. We realize that without the voter lists no definite conclusions can be drawn but based on the facts before us, it is, at the least, more than probable that Bellamy selected the potential jurors by following the numbers given it by the clerk.

The closest case we have been able to find is *United States v. Davis,* 546 F.2d 583 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). In *Davis,* jurors were drawn for service from the jury wheel by a computer system operated by GSA employees. The clerk furnished the employees the starting number, the quotient number, and the number of jurors sought. This information was keypunched and fed into a computer which produced a printout of names of persons selected for jury duty. In holding that the delegation to the GSA computer personnel of a role in the selection process did not amount to a substantial failure to comply with the Act, the court stated:

> It is enough, therefore, that the clerk, under the ultimate supervision of the court, take all reasonable and necessary steps to see that a randomized, objective and reliable system of jury selection is established and maintained, and that he or his deputies exercise all the discretion at every point in the process where there is room for discretion or choice.

*Id.* at 592. Although we realize that computers are recognized to be more accurate and trustworthy than human beings, we think the same reasoning applies here. Counting the number of names on a list and then mailing out questionnaires can only be characterized as a mechanical task. If the instructions are followed, and there is no evidence that they were not, there is no room for the exercise of discretion. We do not think that a mere opportunity to err or discriminate in the jury selection process constitutes a substantial failure to comply with the policy and purposes of the Act.

THE SENTENCING

■ Defendant contends that grand jury materials consisting of tax returns for years other than those charged in the indictment on which he was convicted were improperly disclosed to the probation officer and were reported by him to the district court via the presentence report. This, defendant claims, was a violation of grand jury secrecy under Federal Rule of Criminal Procedure 6[4] and the material impermissibly infected the presentence report.

The government hotly denies that this grand jury material was reported by the probation officer to the district court. It contends that the material came to the court's attention by the defendant's motion to strike the presentence report.

We need not decide whether the defendant or the government is correct as to the disclosure of the material or whether the requirements of then Federal Rule of Criminal Procedure 6 were violated. The district court stated twice during the sentencing hearing that it did not and would not consider the materials that defendant

---

**4.** The rule in effect at the time of sentencing which was before the 1985 amendments provided in pertinent parts:

[6(e)(2) ] ... an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules....

[6(e)(3)(A) ] Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—... (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

....

[6(e)(3)(C) ] Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—(i) when so directed by a court preliminarily to or in connection with a judicial proceeding....

claims infected the sentencing process. It stated at the outset of the hearing:

THE COURT: I was going to say in open court that at the time of disposition, this court does not consider and never has considered, any evidence pertaining ·to affidavits or any other form as to any potential crimes other than those for which the Defendant is before this court.

Also I do not consider Grand Jury minutes as to income tax possibilities or probabilities of the past other than the years in question.

Prior to sentencing, the court stated: "I have gone through the pre-sentence report and I indicated I only consider those matters in the pre-sentence report pertinent to the three count indictment; I do so."

Defendant is asking us to assume that, despite the court's statements, the grand jury material was considered by the court and factored into its sentence. We decline to do so. The court's sentence of one year in jail on each of the three counts, the jail sentences to be served concurrently, and a $10,000 penal fine on each count was not excessive considering that defendant had defrauded the government of $159,404 in taxes, and it was well within the district court's discretion.

*Affirmed.*