**The CELOTEX CORPORATION, Defendant Below, Appellant,**

**v.**

**John WILSON, Ruth Wilson, Edward Kline, Pauline Kline, Charles Watts, Verna Watts, Alton Coney, Phyllis Coney, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: April 29, 1992.
Decided: May 27, 1992.

---

Robert B. Anderson (argued), and Karen S. Brehm of McCarter & English, Wilmington, for appellant.

Thomas C. Crumplar (argued), and Mary Ann Matuszewski of Jacobs & Crumplar, P.A., Wilmington, for appellees.

Before VEASEY, C.J., MOORE, and HOLLAND, JJ.

HOLLAND, Justice:

Following a four week jury trial in the Superior Court,[1] the defendant-appellant, The Celotex Corporation ("Celotex"), was found liable to the plaintiffs-appellees, Edward Kline, Pauline Kline, John Wilson, Charles Watts, and Alton Coney, for their asbestos-related injuries, and to plaintiffs-appellees, Edward Kline, Pauline Kline, Ruth Wilson, Verna Watts, and Phyllis Coney for their loss of consortium claims. Celotex has appealed from the individual judgments entered following the jury's verdicts and from the order denying Celotex's motion for a new trial.[2] This Court consol-

---

1. The trial began on June 12, 1989 and concluded on July 7, 1989.

2. On December 19, 1989, Celotex appealed both from the judgments entered after trial and from the Superior Court's November 21, 1989 order denying Celotex's motion for a new trial. On

January 9, 1990, this Court remanded these matters to the Superior Court to decide Celotex's then pending motion to alter or amend the judgments. On February 9, 1990, Celotex filed a second notice of appeal from the Superior Court's order, entered on January 24, 1990, de-

idated the appeals.[3]

Celotex has raised two issues in this appeal. The first two contentions relate to Delaware's Jury Selection and Service Act ("the Delaware Jury Act"). 10 *Del.C.* ch. 45. According to Celotex, the Superior Court violated 10 *Del.C.* § 4511, and committed reversible error *per se*, by using a special jury questionnaire that permitted jurors to excuse themselves from service, without a specific showing to and finding by the Superior Court of undue hardship, extreme inconvenience, or public necessity. Celotex also contends that, by allowing juror self-exclusion, the special questionnaire *may* have violated its statutory right to a jury panel drawn from a "fair cross section" of the community. 10 *Del.C.* § 4501 (Supp.1990). Finally, Celotex asserts that the Superior Court abused its discretion in admitting "extensive" evidence during trial of the plaintiffs' risks of developing cancer.

We have reviewed each of the issues raised by Celotex. We find no merit in any of Celotex's contentions. Consequently, the judgments of the Superior Court are affirmed.

### Facts

The underlying facts are not in dispute. The plaintiffs, Edward Kline, Pauline Kline, John Wilson, Charles Watts, and Alton Coney, filed complaints in the Superior Court alleging, *inter alia*, that as a result of their exposure to Celotex's asbestos-containing products, they had developed asbestos-related pleural disease and pulmonary asbestosis.[4] These plaintiffs sought compensatory damages for both physical pain and suffering, as well as mental anguish, including their fear of developing cancer. Their spouses sought damages for loss of consortium.[5] In preparation for trial, two juror qualification questionnaires were sent simultaneously to approximately 400 prospective jurors pursuant to 10 *Del.C.* § 4508.[6] The first form was the standard

---

ciding the motion to alter or amend the judgments.

3. After these appeals were filed, but before a briefing schedule was entered, Celotex filed for reorganization under Chapter 11 of the Federal Bankruptcy Code. This resulted in an automatic stay of all legal proceedings involving Celotex. The appellees in this action obtained an order lifting the stay so that this appeal could proceed. *In re Celotex Corp.*, Nos. 90–10016–8B1 and 90–10017–8B1, Baynes, J. (Bankr. M.D.Fla. Oct. 24, 1991).

4. These plaintiffs, except for Pauline Kline, were all insulators in a local asbestos workers union. Pauline Kline's exposure to asbestos came from the work clothes of her husband, Edward Kline.

5. All of these plaintiffs' cases were originally filed in a case captioned *Farrall v. A.C. & S., Co.*, C.A. No. 85C–FE–10. The *Farrall* case involved additional plaintiffs other than just the present appellees. At the defendants' request, the Superior Court subsequently divided the plaintiffs in the *Farrall* case into three subgroups, based upon whether the individual plaintiffs were suffering from malignant or nonmalignant diseases. The defendants alleged this was necessary so that the extent of cancer testimony presented in cases involving cancer would not prejudice the jury in cases not involving cancer. The present appellees were placed into a non-cancer related group. After the plaintiffs in the *Farrall* complaint were divided into separate

subgroups, the Superior Court made pretrial rulings that applied to *all* of the plaintiffs' cases.

6. This section provides:

> **§ 4508. Completion of juror qualification form.**
>
> (a) Prospective jurors shall be selected randomly from the source list for placement on a master list from time to time as needed.
>
> (b) The clerk shall mail a juror qualification form to persons whose names are on a master list with instructions to provide the information sought. The juror qualification form shall contain a declaration that the responses are true to the best of the prospective juror's knowledge, and acknowledgement that a false statement therein may be punished by a fine or imprisonment, or both. If the prospective juror is unable to fill out the form, another person may do it and shall indicate that fact and the reason therefor. If it appears that there is an omission, ambiguity or error in the information provided, the clerk shall instruct the prospective juror to make the necessary addition, clarification or correction.
>
> (c) Any person who fails to provide information sought as instructed shall be directed to appear forthwith before the clerk to fill out the juror qualification form. Any person who fails to appear as directed may be ordered by the court to appear and show cause for failure to do so.
>
> (d) At the time of appearance for jury service, or at the time of any interview before

**1226**

questionnaire used by the Superior Court. 10 *Del.C.* § 4508 (Supp.1990). Along with the standard jury questionnaire, the Superior Court also sent out an additional special asbestos jury qualification questionnaire. The initial inquiry on the special questionnaire was as follows:

> Would you be available to serve on a jury for up to *4 weeks* beginning June 12, 1989, excluding weekends and holidays? (original emphasis).
>
> In answering this question, bear in mind that it is every prospective juror's civic obligation to participate when called for jury duty unless it would be an extreme hardship or extreme inconvenience.
>
> Yes ____ No ____

If a prospective juror responded "no" to this question, the juror was automatically excused from jury service in the trial of this matter.

■ Celotex filed an objection to this jury selection procedure and, in particular, to the use of the first inquiry on the special jury qualification questionnaire.[7] The record reflects that, at the time of Celotex's objection, 273 responses had been received out of the 400 questionnaires that were mailed. The record also reflects that 110 prospective jurors were automatically excused because of their negative response to the first inquiry on the special asbestos jury qualification questionnaire.

In its objection before the Superior Court, Celotex asserted that the initial inquiry on the special asbestos jury questionnaire violated 10 *Del.C.* § 4511 [8], because it allowed prospective jurors to excuse themselves from jury service without a specific showing to and determination by the Superior Court of undue hardship, extreme inconvenience, or public necessity. According to Celotex, this procedure *may* have violated its statutory right to a jury which represented a "fair cross section" of the community. 10 *Del.C.* § 4501. The Superior Court denied this challenge on the basis that Celotex had failed to establish that the jury selection procedure which was utilized in the case *sub judice* violated any of the stated policies or procedures of the Delaware Jury Act.[9]

Celotex also filed a pretrial motion *in limine,* challenging the admissibility of evidence regarding the plaintiffs' risks of developing cancer. Celotex made specific objection to the proposed testimony of the plaintiffs' witness, Joseph C. Wagoner, Sc. D., an epidemiologist. The plaintiffs proffered that Dr. Wagoner would present expert testimony regarding the risks of devel-

---

the Court or clerk, any prospective juror may be required to fill out another juror qualification form in the presence of the Court or clerk, at which time the prospective juror may be questioned, but only with regard to responses to questions contained on the form and grounds for disqualification, excuse or exclusion. Any information thus acquired by the court or clerk shall be noted on the juror qualification form.

10 *Del.C.* § 4508 (Supp.1990).

7. The appellees contend that Celotex did not comply with the provisions of the Delaware Jury Act in challenging the jury selection procedures. 10 *Del.C.* § 4512. This argument was not presented to the Superior Court. Therefore, this Court will not consider it on appeal. Supr. Ct.R. 8.

8. This statute provides:
§ 4511. **Excuse or exclusion from jury service.**
(a) The Court shall determine on the basis of information provided on the juror qualification form or interview with the prospective juror or other competent evidence whether

the prospective juror shall be excused or excluded from jury service.
(b) *A person who is not disqualified may be excused from jury service by the Court only upon a showing of undue hardship, extreme inconvenience or public necessity,* for a period the Court deems necessary, at the conclusion of which the person shall reappear for jury service in accordance with the Court's direction. The Court may determine that membership in specified groups of persons or occupational classes constitutes a showing of undue hardship, extreme inconvenience or public necessity.
(c) A person who is not disqualified may be excluded from jury service by the Court only upon a finding that such person would be unable to render impartial jury service or would be likely to disrupt or otherwise adversely affect the proceedings.
10 *Del.C.* § 4511 (Supp.1990) (emphasis added).

9. The Superior Court refused to certify Celotex's application for an interlocutory appeal. This Court also refused Celotex's petition for leave to file an interlocutory appeal. Supr.Ct.R. 42.

oping cancer among human populations exposed to asbestos. The Superior Court ruled that the plaintiffs suffering from asbestos-related diseases could present limited testimony by Dr. Wagoner and other limited evidence regarding plaintiffs' risks of developing cancer.

The jury rendered a total verdict of $2,450,000 in favor of the plaintiffs.[10] Celotex subsequently filed a motion to alter or amend the judgments and a motion for a new trial. In support of its motions, Celotex argued that there was an insufficient evidentiary basis to sustain a claim for damages because of a fear of cancer and that the cancer evidence had permitted the "dread specter of cancer" to pervade the trial. The Superior Court denied Celotex's motion for a new trial.[11]

*Delaware Jury Selection and Service Act*

■ Celotex argues that the utilization of any jury selection procedures which contravene any provision of the Delaware Jury Act is reversible error *per se*.[12] That argument is contrary to the express and unambiguous language of the statute. Even if the procedures being challenged are admittedly departures from the provisions of the statute, this Court must determine whether those departures constituted "a substantial failure to comply" with the Delaware Jury Act. 10 *Del.C.* § 4512(b).

The issue of what constitutes a "substantial failure to comply" with the Delaware Jury Act is a question of first impression before this Court. However, the Delaware Jury Act was patterned after the federal Jury Selection and Service Act, 28 U.S.C. §§ 1861 *et seq.* ("the federal Jury Act").[13] *See State v. Robinson*, Del.Super., 417 A.2d 953·(1980). We have found the relevant federal precedents particularly didactic in construing the analogous provisions of the Delaware Jury Act.

■ The Delaware Jury Act is intended to establish effective safeguards against impermissible forms of discrimination and arbitrariness and to provide litigants with jury pools that represent a fair cross section of the community. *Compare United States v. Evans*, 526 F.2d 701, 706 (5th Cir.1976) (analyzing the objectives of the federal Jury Act). The declaration of policy in the Delaware Jury Act provides:

It is the policy of this State that jurors serving in each county shall be selected at random from a fair cross section of the population of that county and that all qualified persons shall have an opportunity to be considered for jury service and an obligation to serve as jurors when summoned for that purpose.

10 *Del.C.* § 4501 (Supp.1990).[14] To achieve those policy objectives, the Delaware Jury Act, like its federal counterpart, embodies two important general principles: (1) random selection of juror names from the county in which court is held; and (2) determination of juror disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only. *See United States v. Butts*, 514 F.Supp. 1225 (M.D.Fla.1981) (quoting 1968 U.S.Code Cong. & Ad-

---

**10.** The jury returned verdicts for the plaintiffs in the following amounts: John Wilson, $750,000; Charles Watts, $150,000; Alton Coney, $150,000; Edward Kline, $355,000, Pauline Kline, $820,000; Ruth Wilson, $125,000; Verna Watts, $50,000; and Phyllis Coney, $50,000.

**11.** After consideration of Celotex's motion to alter or amend the judgment, the Superior Court applied the Contribution Among Tortfeasors Act. 10 *Del.C.* Ch. 63. To account for settlements by co-defendants, judgments were entered against Celotex on January 10, 1990 for the following amounts: John and Ruth Wilson, $323,750.00; Charles and Verna Watts, $14,926.56; Alton and Phyllis Coney, $16,458.56; Edward and Pauline Kline, $64,000.00; and Pauline and Edward Kline, $153,900.00.

**12.** We note that this is a *civil* proceeding and that Celotex's argument is based exclusively upon its *statutory* rights pursuant to the Delaware Jury Act. *Cf. Haas v. United Technologies Corp.*, Del.Supr., 450 A.2d 1173, 1184 (1982) (upholding the constitutionality of the Delaware Special Jury Selection Statute, as applied, in a civil case).

**13.** "In fact, many of the provisions in the Delaware [Jury Act], including all provisions relevant to the instant case, are virtually identical to the corresponding provisions in the Federal Act." *State v. Robinson*, 417 A.2d at 956 n. 1.

**14.** This section mirrors 28 U.S.C. § 1861 of the federal Jury Act.

min.News 1792). Thus, consistent with the analytical framework set forth in the precedents construing the federal Jury Act, we conclude that a "substantial failure to comply" with the Delaware Jury Act will be found only if the noncompliance contravenes either of the foregoing two basic principles. *Accord United States v. Savides*, 787 F.2d 751, 754 (1st Cir.1986).

"Jury service is a duty as well as a privilege of citizenship." *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 224, 66 S.Ct. 984, 987, 90 L.Ed. 1181 (1946). The "obligation to serve," pursuant to the declaration of policy in the Delaware Jury Act, is implemented by Section 4511(b). That Section provides that any prospective juror, who is not disqualified [15], may be excused from jury service by the Superior Court "*only* upon a showing of undue hardship, extreme inconvenience or public necessity." 10 *Del.C.* § 4511(b) (Supp.1990) (emphasis added). Thus, the provisions of 10 *Del.C.* § 4511(b) require the court to inquire into the *specific reason* given by a prospective juror who desires to be excused from service and for the court to determine whether the substantial statutory prerequisites to granting a *personal request* for excusal have been satisfied. *See Riley v. State*, Del.Supr., 496 A.2d 997, 1009 (1985). *See also City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp. 1240, 1256–57 (N.D.Ohio 1980).

■ Accordingly, the selection procedure used by the Superior Court in this case, automatically excusing prospective jurors based on an *ex parte* response to a single question in the special questionnaire, without a specific showing and a judicial finding of undue hardship, extreme inconvenience or public necessity, was contrary to the express terms of the Delaware Jury

Act. 10 *Del.C.* § 4511(b) (Supp.1990). *See also Thiel v. Southern Pacific Co.*, 328 U.S. at 224, 66 S.Ct. at 987.[16] However, the *sine qua non* under the Delaware Jury Act is substantial noncompliance. 10 *Del.C.* § 4512(b). Therefore, technical deviations, or even a number of them, that do not frustrate the random selection and fair cross section requirements, and do not result in impermissible discrimination and arbitrariness, will not constitute a substantial failure to comply with the Delaware Jury Act. *See United States v. Savides*, 787 F.2d at 754; *United States v. Gregory*, 730 F.2d 692, 699 (11th Cir.1984).

The burden was on Celotex to establish a denial of the statutory rights afforded to it. To satisfy that burden, Celotex was required to demonstrate that the jury selection procedure utilized by the Superior Court failed to substantially comply with the provisions of the Delaware Jury Act. Before Celotex presented its objections to the Superior Court, Celotex had the opportunity to review all of the standard and the special juror qualification questionnaires which were returned, and thereby to investigate the composition of the pool from which the jury in this case was drawn. *Cf. United States v. Savides*, 787 F.2d at 754.

■ The record reflects that Celotex has not sustained its burden of presenting evidence that there was a substantial failure by the Superior Court to comply with the random selection and the cross-section requirements of the Delaware Jury Act. Celotex has made no showing on the record in the Superior Court that prospective jurors were selected in a non-random manner.[17] Similarly, Celotex has failed to demonstrate, on the record, that the jury selection process was not objective.

---

**15.** *See* 10 *Del.C.* § 4509 (Supp.1990).

**16.** *Thiel* "was decided not on constitutional grounds, but upon the supervisory power of the Court over the administration of justice in the Federal system." *Haas v. United Technologies Corp.*, 450 A.2d at 1183.

**17.** The federal courts have determined that Congress did not intend for "random selection" under the federal jury selection act to be defined as "statistical randomness." *United States v.*

*Gregory*, 730 F.2d at 699. We conclude that this is also a correct assessment of the Delaware Jury Act. While the methods used in the present case may have resulted in a venire that was not statistically random, there has been no showing that they resulted in discriminatory selection of jurors or otherwise prevented jury panels from consisting of fair cross-sections of the community. *See Riley v. State*, 496 A.2d at 1009.

■ Celotex, as the appellant, was obligated to establish a sufficient record to enable this Court to render a fair and accurate decision, with respect to any action by the trial court which it challenges on appeal. *Tricoche v. State,* Del.Supr., 525 A.2d 151, 154 (1987). Celotex has not provided this Court with a sufficient record to determine whether the jury selection procedures utilized by the Superior Court in the case *sub judice* failed to substantially comply with the Delaware Jury Act.[18] Consequently, Celotex's challenges to the jury selection procedures utilized by the Superior Court cannot prevail in this appeal.

### *"Fear of Cancer" Evidence*

■ Celotex's final contention in this appeal is that the Superior Court abused its discretion by permitting the plaintiffs with asbestos-related diseases to introduce "extensive" evidence at trial in support of their claims of mental anguish caused by the fear of developing cancer.[19] Celotex maintains that what it characterizes as "excessive testimony" about the "dread specter of cancer" overshadowed all of the other evidence, causing undue prejudice to Celotex. Celotex specifically challenges the prejudicial effect of the expert testimony of Dr. Wagoner, who testified about the risks of developing cancer among human populations exposed to asbestos.[20]

The record reflects, however, that the Superior Court placed careful limitations on the extent of his testimony,[21] before permitting Dr. Wagoner to testify as an expert witness. *See Lee v. A.C. & S. Co.,* Del.Super., 542 A.2d 352 (1987). Moreover, the Superior Court gave the following limiting instruction to the jury before the presentation of Dr. Wagoner's testimony:

Today, or this morning, anyway, the witness will be Dr. Joseph Wagoner, who will be called by the plaintiffs. He will be testifying concerning possible increased risks of cancer for individuals with asbestos-related diseases. His testimony will be admitted in this case only in connection with plaintiffs' claim based on alleged fear of developing cancer. None of the plaintiffs claim that they have cancer. There is no claim that the plaintiffs will develop cancer. If a plaintiff ever develops cancer, which he contends is caused by asbestos, he can file a new suit with respect to that. The testimony regarding risks of cancer is to be considered by you solely in deciding whether a plaintiff's claimed fear of developing cancer, if any such fear exist, is reasonable. You are to consider his testimony in the light of the instruction that I have just given you. It's a limiting instruction that I've just given to you.

The Superior Court gave a similar limiting instruction to the jury again before they retired for deliberations.

The record does not support Celotex's contention that the Superior Court allowed evidence about the plaintiffs' fear of the increased risks of contracting cancer to

---

**18.** Celotex represents that after this appeal was filed, the special jury questionnaires were destroyed by the Asbestos Master. Celotex submits that the destruction of the special jury questionnaires, in violation of 10 *Del.C.* § 4513(c), makes appellate review of its "fair cross section" claim impossible. We disagree. Assuming, *arguendo,* that the questionnaires were destroyed after this appeal was filed, this Court must review Celotex's claim on the basis of the record that was made when Celotex presented its objections to the Superior Court. Supr.Ct.R. 8 and 9.

**19.** Celotex does not contend that plaintiffs with asbestos-related diseases may not, under any circumstances, recover damages for their fears of contracting cancer. *See Mergenthaler v. Asbestos Corp. of Am.,* Del.Supr., 480 A.2d 647, 651 (1984). Nor does Celotex contend that all evi-

dence of the increased risks of contracting cancer, to one presently suffering an asbestos-related injury, is inadmissible.

**20.** The record also reflects that additional references to the plaintiffs' increased risks of contracting cancer, made by two other expert witnesses, were never objected to by Celotex. These references were made in a specific, limited context.

**21.** For example, at Celotex's request, the Superior Court prohibited Dr. Wagoner from testifying that a particular plaintiff's disease was caused by asbestos. *See Lee v. A.C. & S. Co.,* Del.Super., 542 A.2d 352 (1987). Dr. Wagoner was only permitted to discuss the specific health risks to persons afflicted by the same diseases as the plaintiffs.

pervade the trial. Instead, the record reflects that the Superior Court properly exercised its discretion in determining the amount and extent of the evidence which the plaintiffs' were permitted to offer, in support of their claims relating to the fear of developing cancer. *Firestone Tire and Rubber Co. v. Adams*, Del.Supr., 541 A.2d 567, 572 (1988). Accordingly, we have concluded that Celotex's argument to the contrary is without merit.

### Conclusion

The judgments of the Superior Court, resulting in the verdicts in favor of all of the individual plaintiffs-appellees, are hereby AFFIRMED.