# NORFOLK & WESTERN RAILWAY CO. *v.* AYERS
## ET AL.

No. 01–963.   Argued November 6, 2002—Decided March 10, 2003

136

GINSBURG, J., delivered the opinion for a unanimous Court with respect to Parts I, II, and IV, and the opinion of the Court with respect to Part III, in which STEVENS, SCALIA, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, C. J., and O'CONNOR and BREYER, JJ., joined, *post*, p. 166. BREYER, J., filed an opinion concurring in part and dissenting in part, *post*, p. 182.

*Carter G. Phillips* argued the cause for petitioner. With him on the briefs were *Stephen B. Kinnaird, Fred Adkins, Rodney L. Baker II,* and *Laura D. Hunt.*

*David B. Salmons* argued the cause *pro hac vice* for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Clement, Anthony J. Steinmeyer,* and *Peter R. Maier.*

*Richard J. Lazarus* argued the cause for respondents. With him on the brief were *James A. McKowen, James H. Rion, Jr.,* and *Lawrence M. Mann.**

---

*Briefs of *amici curiae* urging reversal were filed for the Association of American Railroads by *Daniel Saphire, Randall A. Jordan, Mary Helen Moses,* and *William A. Brasher;* for the American Insurance Association by *Seth P. Waxman, Edward C. DuMont, Kimberly Parker, Craig A. Berrington,* and *Lynda S. Mounts;* for the Chamber of Commerce of the United States by *Evan M. Tager, Eileen Penner, Miriam R. Nemetz,* and *Robin S. Conrad;* and for Trial Lawyers for Public Justice by *Arthur H. Bryant, Brent M. Rosenthal, Misty A. Farris,* and *Kevin D. McHargue.*

Briefs of *amici curiae* urging affirmance were filed for the State of West Virginia et al. by *Darrell V. McGraw, Jr.,* Attorney General of West Virginia, *Frances Ann Hughes,* Managing Deputy Attorney General, *Silas Taylor,* Senior Deputy Attorney General, and *Robert Kono,* Acting Attorney General of Guam, and by the Attorneys General for their respective States as follows: *Bill Lockyer* of California, *M. Jane Brady* of Delaware, *Thomas J. Miller* of Iowa, *G. Steven Rowe* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Mike Hatch* of Minnesota, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Philip T. McLaughlin* of New Hampshire, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Roy Cooper* of North Carolina, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Sheldon Whitehouse* of Rhode Island, and *William H. Sorrell* of Vermont; and for the

JUSTICE GINSBURG delivered the opinion of the Court.

The Federal Employers' Liability Act (FELA or Act), 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60, makes common carrier railroads liable in damages to employees who suffer work-related injuries caused "in whole or in part" by the railroad's negligence. This case, brought against Norfolk & Western Railway Company (Norfolk) by six former employees now suffering from asbestosis (asbestosis claimants), presents two issues involving the FELA's application. The first issue concerns the damages recoverable by a railroad worker who suffers from the disease asbestosis: When the cause of that disease, in whole or in part, was exposure to asbestos while on the job, may the worker's recovery for his asbestosis-related "pain and suffering" include damages for fear of developing cancer?

The second issue concerns the extent of the railroad's liability when third parties not before the court—for example, prior or subsequent employers or asbestos manufacturers or suppliers—may have contributed to the worker's injury. Is the railroad answerable in full to the employee, so that pursuit of contribution or indemnity from other potentially liable enterprises is the railroad's sole damages-award-sharing recourse? Or is the railroad initially entitled to an apportionment among injury-causing tortfeasors, *i. e.*, a division of

---

American Federation of Labor and Congress of Industrial Organizations et al. by *Jonathan P. Hiatt, Robert Alexander, Leon Dayan,* and *Laurence Gold.*

Briefs of *amici curiae* were filed for American Law Professors by *Ned Miltenberg;* for the American Public Health Association by *Scott L. Nelson, David C. Vladeck,* and *Brian Wolfman;* for the Brotherhood of Locomotive Engineers by *William G. Jungbauer* and *Keith A. Queensen;* for the Coalition for Asbestos Justice, Inc., et al. by *Victor E. Schwartz, Mark A. Behrens, Walter E. Dellinger III, Pamela A. Harris, Jan S. Amundson, David F. Zoll, Donald D. Evans,* and *David T. Deal;* for the United Transportation Union by *Clinton J. Miller III;* and for the Washington Legal Foundation by *Griffin B. Bell, Jeffrey S. Bucholtz, Daniel J. Popeo,* and *Richard A. Samp.*

damages limiting the railroad's liability to the injured employee to a proportionate share?

In resolving the first issue, we follow the line drawn by *Metro-North Commuter R. Co.* v. *Buckley*, 521 U. S. 424 (1997), a decision that relied on and complemented *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532 (1994). In *Metro-North*, we held that emotional distress damages may not be recovered under the FELA by disease-free asbestos-exposed workers; in contrast, we observed, workers who "suffe[r] from a disease" (here, asbestosis) may "recover for related negligently caused emotional distress." 521 U. S., at 432. We decline to blur, blend, or reconfigure our FELA jurisprudence in the manner urged by the petitioner; instead, we adhere to the clear line our recent decisions delineate. Accordingly, we hold that mental anguish damages resulting from the fear of developing cancer may be recovered under the FELA by a railroad worker suffering from the actionable injury asbestosis caused by work-related exposure to asbestos.

As to the second issue, we similarly decline to write new law by requiring an initial apportionment of damages among potential tortfeasors. The FELA's express terms, reinforced by consistent judicial applications of the Act, allow a worker to recover his entire damages from a railroad whose negligence jointly caused an injury (here, the chronic disease asbestosis), thus placing on the railroad the burden of seeking contribution from other tortfeasors.

I

The asbestosis claimants (plaintiffs below, respondents here) brought this FELA action against their former employer, Norfolk, in the Circuit Court of Kanawha County, West Virginia.[1] Norfolk, they alleged, negligently exposed them to asbestos, which caused them to contract the occupa-

---

[1] FELA cases may be brought, at plaintiff's option, in federal court or in state court. 45 U. S. C. § 56.

tional disease asbestosis. App. 17–20.[2] As an element of their occupational disease damages, the asbestosis claimants sought recovery for mental anguish based on their fear of developing cancer. *Id.*, at 21.

Before trial, Norfolk moved to exclude all evidence referring to cancer as irrelevant and prejudicial. *Id.*, at 52–53. The trial court denied the motion, Tr. 251 (Apr. 14, 1998), and the asbestosis claimants placed before the jury extensive evidence relating to cancer, including expert testimony that asbestosis sufferers with smoking histories have a significantly increased risk of developing lung cancer.[3] (Of the six asbestosis claimants, five had smoking histories, and two persisted in smoking even after their asbestosis diagnosis. App. 265, 336–337.) Asbestosis sufferers—workers whose exposure to asbestos has manifested itself in a chronic disease—the jury also heard, have a significant (one in ten) risk of dying of mesothelioma, a fatal cancer of the lining of the lung or abdominal cavity. *Id.*, at 92–97 (asbestosis claimants' expert); *id.*, at 472 (Norfolk's expert) (nine or ten percent).[4]

---

[2] Asbestosis is a noncancerous scarring of the lungs by asbestos fibers; symptoms include shortness of breath, coughing, and fatigue. Ranging in severity from mild to debilitating, it is a chronic disease that, in rare instances, is fatal. See RAND Institute for Civil Justice, S. Carroll et al., Asbestos Litigation Costs and Compensation: An Interim Report 17 (2002), Petitioner's Supplemental Lodging, p. SL82 (hereinafter RAND Institute); U. S. Dept. of Health and Human Services, Agency for Toxic Substances and Disease Registry, Asbestos Toxicity 20 (2000).

[3] The risk of mortality from lung cancer for smokers with asbestosis, the trial evidence showed, is 39 percent. App. 93–94 (asbestosis claimants' expert); *id.*, at 473 (Norfolk's expert). For nonsmokers, the risk is much lower, approximately 2.5 percent. *Ibid.*

[4] While smoking contributes significantly to the risk of lung cancer, it does not bear on the risk of mesothelioma. *Id.*, at 93. Asbestos is the only cause of mesothelioma established thus far, although some instances of the disease are not traceable to asbestos. RAND Institute 17. The latency period for asbestos-related disease is generally 20–40 years from exposure. *Id.*, at 16.

Concluding that no asbestosis claimant had shown he was reasonably certain to develop cancer, the trial court instructed the jury that damages could not be awarded to any claimant "for cancer or any increased risk of cancer." *Id.*, at 573. The testimony about cancer, the court explained, was relevant "only to judge the genuineness of plaintiffs' claims of fear of developing cancer." *Ibid.* On that score, the court charged:

> "[A]ny plaintiff who has demonstrated that he has developed a reasonable fear of cancer that is related to proven physical injury from asbestos is entitled to be compensated for that fear as a part of the damages you may award for pain and suffering." *Ibid.*

In so instructing the jury, the court rejected Norfolk's proposed instruction, which would have ruled out damages for an asbestosis sufferer's fear of cancer, unless the claimant proved both "an actual likelihood of developing cancer" and "physical manifestations" of the alleged fear. See *id.*, at 548.

The trial court also refused Norfolk's request to instruct the jury to apportion damages between Norfolk and other employers alleged to have contributed to an asbestosis claimant's disease. *Id.*, at 539.[5] Two of the claimants had significant exposure to asbestos while working for other employers: Carl Butler, exposed to asbestos at Norfolk for only three months, worked with asbestos elsewhere as a pipefitter for 33 years, *id.*, at 250, 252, 375; Freeman Ayers was exposed to asbestos for several years while working at auto-

---

[5] The apportionment instruction Norfolk proposed stated: "If you find that the plaintiff in this case has a condition or disease which was caused by his employment with employers other than the railroad, plaintiff's recovery must be limited to only such damages as result from his railroad employment and he cannot recover damages which have been or will be caused by his nonrailroad employment. This is so because the railroad can be held responsible only for such of a plaintiff's damages as result from its alleged negligence while the plaintiff was employed at the railroad." App. 539.

body shops, *id.*, at 274–275. In awarding damages, the trial court charged, the jury was "not to make a deduction for the contribution of non-railroad exposures," so long as it found that Norfolk was negligent and that "dust exposures at [Norfolk] contributed, however slightly, to the plaintiff's injuries." *Id.*, at 570.[6]

The jury returned total damages awards for each asbestosis claimant, ranging from $770,000 to $1.2 million. *Id.*, at 578–589. After reduction for three claimants' comparative negligence from smoking and for settlements with non-FELA entities, the final judgments amounted to approximately $4.9 million. *Id.*, at 590–613. It is impossible to look behind those judgments to determine the amount the jury awarded for any particular element of damages. Norfolk, although it could have done so, see W. Va. Rule Civ. Proc. 49 (1998), did not endeavor to clarify the jury's damages determinations; it did not seek a special verdict or interrogatory calling upon the jury to report, separately, its assessments, if any, for fear-of-cancer damages.

The trial court denied Norfolk's motion for a new trial, App. to Pet. for Cert. 4a, and the Supreme Court of Appeals of West Virginia denied Norfolk's request for discretionary review, *id.*, at 1a–2a. We granted certiorari, 535 U. S. 969 (2002), and now affirm.

## II

Section 1 of the FELA renders common carrier railroads "liable in damages to any person suffering injury while . . . employed by [the] carrier" if the "injury or death result-[ed] in whole or in part from the [carrier's] negligence."

---

[6] As required by the FELA, the trial court directed the jury to determine whether negligence by any of the asbestosis claimants contributed to their injuries and to compare any such negligence with that of Norfolk "in terms of percentages." *Id.*, at 570–571; see 45 U. S. C. §53 ("contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee").

45 U. S. C. §51. Enacted in 1908, Congress designed the FELA to "shif[t] part of the 'human overhead' of doing business from employees to their employers." *Gottshall*, 512 U. S., at 542 (quoting *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54, 58 (1943)). "[T]o further [the Act's] humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers." *Gottshall*, 512 U. S., at 542. As cataloged in *Gottshall*, the FELA "abolished the fellow servant rule"; "rejected the doctrine of contributory negligence in favor of . . . comparative negligence"; "prohibited employers from exempting themselves from [the] FELA through contract"; and, in a 1939 amendment, "abolished the assumption of risk defense." *Id.*, at 542–543; see 45 U. S. C. §§51–55. "Only to the extent of these explicit statutory alterations," however, "is [the] FELA 'an avowed departure from the rules of the common law.'" *Gottshall*, 512 U. S., at 544 (quoting *Sinkler* v. *Missouri Pacific R. Co.*, 356 U. S. 326, 329 (1958)). When the Court confronts a dispute regarding what injuries are compensable under the statute, *Gottshall* instructs, common-law principles "are entitled to great weight in our analysis." 512 U. S., at 544; see *id.*, at 558 (SOUTER, J., concurring) (The Court's duty "is to develop a federal common law of negligence under FELA, informed by reference to the evolving common law.").

### III

### A

We turn first to the question whether the trial judge correctly stated the law when he charged the jury that an asbestosis claimant, upon demonstrating a reasonable fear of cancer stemming from his present disease, could recover for that fear as part of asbestosis-related pain and suffering damages. See *supra*, at 143. In answering this question, we follow the path marked by the Court's decisions in *Consolidated*

*Rail Corporation* v. *Gottshall,* 512 U. S. 532 (1994), and *Metro-North Commuter R. Co.* v. *Buckley,* 521 U. S. 424 (1997).

The FELA plaintiff in *Gottshall* alleged that he witnessed the death of a co-worker while on the job, and that the episode caused him severe emotional distress. 512 U. S., at 536–537. He sought to recover damages from his employer, Conrail, for "mental or emotional harm . . . not directly brought about by a physical injury." *Id.,* at 544.

Reversing the Court of Appeals' judgment in favor of the plaintiff, this Court stated that uncabined recognition of claims for negligently inflicted emotional distress would "hol[d] out the very real possibility of nearly infinite and unpredictable liability for defendants." *Id.,* at 546. Of the "limiting tests . . . developed in the common law," *ibid.,* the Court selected the zone-of-danger test to delineate "the proper scope of an employer's duty under [the] FELA to avoid subjecting its employees to negligently inflicted emotional injury," *id.,* at 554. That test confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) "sustain a physical impact as a result of a defendant's negligent conduct"; or (2) "are placed in immediate risk of physical harm by that conduct"—that is, those who escaped instant physical harm, but were "within the zone of danger of physical impact." *Id.,* at 547–548 (internal quotation marks omitted). The Court remanded *Gottshall* for reconsideration under the zone-of-danger test. *Id.,* at 558.

In *Metro-North,* the Court applied the zone-of-danger test to a claim for damages under the FELA, one element of which was fear of cancer stemming from exposure to asbestos. The plaintiff in *Metro-North* had been intensively exposed to asbestos while working as a pipefitter for Metro-North in New York City's Grand Central Terminal. At the time of his lawsuit, however, he had a clean bill of health. The Court rejected his entire claim for relief. Exposure alone, the Court held, is insufficient to show "physical im-

pact" under the zone-of-danger test. 521 U. S., at 430. "[A] simple (though extensive) contact with a carcinogenic substance," the Court observed, "does not . . . offer much help in separating valid from invalid emotional distress claims." *Id.*, at 434. The evaluation problem would be formidable, the Court explained, "because contacts, even extensive contacts, with serious carcinogens are common." *Ibid.* "The large number of those exposed and the uncertainties that may surround recovery," the Court added, "suggest what *Gottshall* called the problem of 'unlimited and unpredictable liability.'" *Id.*, at 435 (quoting 512 U. S., at 557).

As in *Gottshall,* the Court distinguished stand-alone distress claims from prayers for damages for emotional pain and suffering tied to a physical injury: "Common-law courts," the Court recognized, "*do* permit a plaintiff *who suffers from a disease* to recover for related negligently caused emotional distress . . . ." 521 U. S., at 432 (emphasis added). When a plaintiff suffers from a disease, the Court noted, common-law courts have made "a special effort" to value related emotional distress, "perhaps from a desire to make a physically injured victim whole or because the parties are likely to be in court in any event." *Id.*, at 436–437.

In sum, our decisions in *Gottshall* and *Metro-North* describe two categories: Stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted. Norfolk, whose position the principal dissent embraces, see, *e. g., post,* at 172, 177 (KENNEDY, J., concurring in part and dissenting in part), would have us ally this case with those in the stand-alone emotional distress category, Brief for Petitioner 16–31; the asbestosis claimants urge its placement in the

emotional distress brought on by a physical injury (or disease) category, Brief for Respondents 26.[7]

Relevant to this characterization question, the parties agree that asbestosis is a cognizable injury under the FELA. See *Urie* v. *Thompson*, 337 U. S. 163, 187 (1949) (occupational diseases caused by exposure to hazardous dusts are injuries under the FELA). Norfolk does not dispute that the claimants suffer from asbestosis, see Tr. of Oral Arg. 4, or that asbestosis can be "a clinically serious, often disabling, and progressive disease," Reply Brief 6 (internal quotation marks omitted). As *Metro-North* plainly indicates, pain and suffering damages may include compensation for fear of cancer when that fear "accompanies a physical injury." 521 U. S., at 430; see *id.,* at 436 ("The common law permits emotional distress recovery for that category of plaintiffs who suffer from a disease."). Norfolk, therefore, cannot plausibly maintain that the claimants here, like the plaintiff in *Metro-North*, "are disease and symptom free." *Id.,* at 432. The plaintiffs in *Gottshall* and *Metro-North* grounded their suits on claims of negligent infliction of emotional distress. The claimants before us, in contrast, complain of a negligently inflicted physical injury (asbestosis) and attendant pain and suffering.

## B

Unlike stand-alone claims for negligently inflicted emotional distress, claims for pain and suffering associated with, or "parasitic" on, a physical injury are traditionally compensable. The Restatement (Second) of Torts § 456 (1963–1964) (hereinafter Restatement) states the general rule:

> "If the actor's negligent conduct has so caused *any* bodily harm to another as to make him liable for it, the actor is also subject to liability for

---

[7] JUSTICE BREYER, it appears, would not place this case in either of the two above-described categories, but somewhere in between. See *post,* at 187 (opinion concurring in part and dissenting in part).

"(a) fright, shock, *or other emotional disturbance* resulting from the bodily harm or from the conduct which causes it . . . ."   (Emphases added.)

A plaintiff suffering bodily harm need not allege physical manifestations of her mental anguish.   *Id.*, Comment *c.* "The plaintiff must of course present evidence that she has suffered, but otherwise her emotional distress claims, in whatever form, are fully recoverable."   D. Dobbs, Law of Torts 822 (2000).

By 1908, when the FELA was enacted, the common law had evolved to encompass apprehension of future harm as a component of pain and suffering.   The future harm, genuinely feared, need not be more likely than not to materialize. See Minneman, Future Disease or Condition, or Anxiety Relating Thereto, as Element of Recovery, 50 A. L. R. 4th 13, 25, § 2[a] (1986) (mental anguish related to physical injury is recoverable even if "the underlying future prospect is not itself compensable inasmuch as it is not sufficiently likely to occur").   Physically injured plaintiffs, it is now recognized, may recover for "reasonable fears" of a future disease. Dobbs, *supra*, at 844.   As a classic example, plaintiffs bitten by dogs succeeded in gaining recovery, not only for the pain of the wound, but also for their fear that the bite would someday result in rabies or tetanus.   The wound might heal, but "[t]he ghost of hydrophobia is raised, not to down during the life-time of the victim."   *The Lord Derby*, 17 F. 265, 267 (ED La. 1883).[8]

---

[8] See also *Gamer* v. *Winchester*, 110 S. W. 2d 1190, 1193 (Tex. Civ. App. 1937) (rabies, lockjaw, blood poisoning); *Serio* v. *American Brewing Co.*, 141 La. 290, 299, 74 So. 998, 1001 (1917) (hydrophobia); *Ayers* v. *Macoughtry*, 29 Okla. 399, 402, 117 P. 1088, 1090 (1911) (fear of rabies); *Buck* v. *Brady*, 110 Md. 568, 573, 73 A. 277, 279 (1909) (hydrophobia); *Heintz* v. *Caldwell*, 9 Ohio Cir. Dec. 412 (1898) (hydrophobia and lockjaw); *Warner* v. *Chamberlain*, 12 Del. 18, 21, 30 A. 638, 639 (1884) (hydrophobia); *Godeau* v. *Blood*, 52 Vt. 251 (1880) (apprehension of poison from dog bite).

In the course of the 20th century, courts sustained a variety of other "fear-of" claims.[9]  Among them have been claims for fear of cancer.  Heightened vulnerability to cancer, as one court observed, "must necessarily have a most depressing effect upon the injured person.  Like the sword of Damocles," he knows it is there, but not whether or when it will fall.  *Alley* v. *Charlotte Pipe & Foundry Co.*, 159 N. C. 327, 331, 74 S. E. 885, 886 (1912).[10]

Many courts in recent years have considered the question presented here—whether an asbestosis claimant may be compensated for fear of cancer.  Of decisions that address

---

[9] See, *e. g.*, *Goodmaster* v. *Houser*, 225 Conn. 637, 647, 625 A. 2d 1366, 1371 (1993) (apprehension that motor vehicle accident injury would necessitate future surgery, risking facial nerve paralysis); *Laxton* v. *Orkin Exterminating Co.*, 639 S. W. 2d 431, 434 (Tenn. 1982) (fear of illness from drinking contaminated well water); *Baylor* v. *Tyrrell*, 177 Neb. 812, 824–826, 131 N. W. 2d 393, 401–402 (1964) (fear of deterioration of hip bone following motor vehicle accident); *Schneider* v. *Chalfonte Builders, Inc.*, 11 Bucks 122 (Pa. Ct. Common Pleas 1961) (fear that contaminated water causing gastrointestinal ailments would later cause a more grave disease, *e. g.*, typhoid fever); *Figlar* v. *Gordon*, 133 Conn. 577, 585, 53 A. 2d 645, 648 (1947) (fear that brain injury from motor vehicle accident would lead to epilepsy); *Southern Kansas R. Co. of Texas* v. *McSwain*, 55 Tex. Civ. App. 317, 319, 118 S. W. 874, 875 (1909) (apprehension of blood poisoning from foot injury); *Butts* v. *National Exchange Bank*, 99 Mo. App. 168, 173, 72 S. W. 1083, 1084 (1903) (same).

[10] See also *Sterling* v. *Velsicol Chemical Corp.*, 855 F. 2d 1188, 1206 (CA6 1988) (fear of cancer from ingestion of contaminated well water); *Clark* v. *Taylor*, 710 F. 2d 4, 14 (CA1 1983) (fear of bladder cancer from "benzidine test" on prisoner to detect blood on skin); *Dempsey* v. *Hartley*, 94 F. Supp. 918, 921 (ED Pa. 1951) (injuries to breasts); *Zieber* v. *Bogert*, 565 Pa. 376, 383, 773 A. 2d 758, 762 (2001) (fear of a recurrence of cancer when first cancer was untimely diagnosed as a result of medical malpractice); *Anderson* v. *Welding Testing Laboratory, Inc.*, 304 So. 2d 351, 353 (La. 1974) (handling of radioactive pill); *Lorenc* v. *Chemirad Corp.*, 37 N. J. 56, 76, 179 A. 2d 401, 411 (1962) (toxic chemical spilled on hand); *Ferrara* v. *Galluchio*, 5 N. Y. 2d 16, 20–21, 152 N. E. 2d 249, 252–253 (1958) (radiation burn on shoulder); *Coover* v. *Painless Parker, Dentist*, 105 Cal. App. 110, 115, 286 P. 1048, 1050 (1930) (X-ray burns).

the issue, a clear majority sustain recovery. See, *e. g.,* *Hoerner* v. *Anco Insulations, Inc.,* 2000–2333, p. 49 (La. App. 1/23/02), 812 So. 2d 45, 77 (fear of cancer testimony "appropriately presented in order to prove [asbestosis claimant's] general damage claim"); *Beeman* v. *Manville Corp. Asbestos Disease Compensation Fund,* 496 N. W. 2d 247, 252–253 (Iowa 1993) (cancer evidence held admissible to show reasonableness of asbestosis claimant's fear of cancer); *Denton* v. *Southern R. Co.,* 854 S. W. 2d 885, 888–889 (Tenn. App. 1993) (FELA decision holding erroneous "Trial Court's exclusion of evidence about [asbestosis claimant's] fear of cancer"); *Celotex Corp.* v. *Wilson,* 607 A. 2d 1223, 1229–1230 (Del. 1992) (sustaining jury charge allowing damages for asbestosis claimants' fear of cancer); *Coffman* v. *Keene Corp.,* 257 N. J. Super. 279, 293–294, 608 A. 2d 416, 424–425 (1992) (sustaining award of damages that included compensation for asbestosis claimant's fear of cancer); *Fibreboard Corp.* v. *Pool,* 813 S. W. 2d 658, 666, 675–676 (Tex. App. 1991) (sustaining jury charge allowing fear of cancer damages for plaintiff with "confirmed asbestosis"); *Sorenson* v. *Raymark Industries, Inc.,* 51 Wash. App. 954, 958, 756 P. 2d 740, 742 (1988) (evidence of increased risk of cancer held "admissible to establish, as a damage factor, the reasonableness of [an asbestosis claimant's] *fear* that he would contract cancer"); *Eagle-Picher Industries, Inc.* v. *Cox,* 481 So. 2d 517, 529 (Fla. App. 1985) (asbestosis claimants may recover for fear of cancer); *Devlin* v. *Johns-Manville Corp.,* 202 N. J. Super. 556, 563, 495 A. 2d 495, 499 (1985) (asbestosis claimants, who suffered "substantial bodily harm" from asbestos, may recover for fear of cancer).[11]

---

[11] See also *Jackson* v. *Johns-Manville Sales Corp.,* 781 F. 2d 394, 413–414 (CA5 1986) (fear of cancer compensable, but plaintiff established cancer more likely than not to occur); *Bonnette* v. *Conoco, Inc.,* 2001–2767, p. 11 (La. 1/28/03), 837 So. 2d 1219, 1227 (mental anguish accompanied by physical injury is compensable, but mere exposure to asbestos does not

Arguing against the trend in the lower courts, Norfolk and its supporting *amici* assert that the asbestosis claimants' alleged cancer fears are too remote from asbestosis to warrant inclusion in their pain and suffering awards.   In support of this contention, the United States, one of Norfolk's *amici*, refers to the "separate disease rule," under which most courts have held that the statute of limitations runs separately for each asbestos-related disease.   Brief for United States as *Amicus Curiae* 12.   See, *e. g., Wilson* v. *Johns-Manville Sales Corp.*, 684 F. 2d 111, 120–121 (CADC 1982); *Pustejovsky* v. *Rapid-American Corp.*, 35 S. W. 3d 643, 649, n. 3 (Tex. 2000) (listing cases).[12]   Because the asbestosis

qualify as a physical injury); *Wolff* v. *A-One Oil, Inc.*, 216 App. Div. 2d 291, 292, 627 N. Y. S. 2d 788, 789–790 (1995) (fear-of-cancer recovery available if a plaintiff has asbestos-induced disease); *Capital Holding Corp.* v. *Bailey*, 873 S. W. 2d 187, 194 (Ky. 1994) (recovery "if *first* the plaintiff can cross the threshold of establishing a harmful change has resulted from exposure to the potentially cancer producing agent"); *Mauro* v. *Raymark Industries, Inc.*, 116 N. J. 126, 137, 561 A. 2d 257, 263 (1989) (claim for fear of future disease held "clearly cognizable where, as here, plaintiff's exposure to asbestos has resulted in physical injury"); *Lavelle* v. *Owens-Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 11, 14, 507 N. E. 2d 476, 480–481 (Ct. Common Pleas, Cuyahoga Cty. 1987) (asbestosis-afflicted plaintiff could recover for fear of cancer either as pain and suffering damages associated with asbestosis, or as compensable stand-alone claim of negligent infliction of emotional distress).

Contrary precedent is slim in comparison to the heavy weight of authority.   See *Fulmore* v. *CSX Transp., Inc.*, 252 Ga. App. 884, 897, 557 S. E. 2d 64, 75 (2001) (denying fear-of-cancer damages to asbestosis claimant based in part on misplaced reliance on *Metro-North Commuter R. Co.* v. *Buckley*, 521 U. S. 424 (1997)); *Cleveland* v. *Johns-Manville Corp.*, 547 Pa. 402, 410, 690 A. 2d 1146, 1150 (1997) (plaintiff asserting noncancer asbestos claims may not recover any cancer-related damages); *Watson* v. *Norfolk & Western R. Co.*, 30 Ohio App. 3d 201, 203–204, 507 N. E. 2d 468, 471–472 (1987) (recovery permissible under the FELA only on showing that plaintiff will probably develop cancer from asbestos exposure).

[12] The rule evolved as a response to the special problem posed by latent-disease cases.   Under the single-action rule, a plaintiff who recovered for asbestosis would then be precluded from bringing suit for later developed mesothelioma.   Allowing separate complaints for each disease, courts de-

claimants may bring a second action if cancer develops, Norfolk and the Government argue, cancer-related damages are unwarranted in their asbestosis suit. Tr. of Oral Arg. 17–18; Reply Brief 5. The question, as the Government frames it, is not *whether* the asbestosis claimants can recover for fear of cancer, but *when.* Brief for United States as *Amicus Curiae* 15. The principal dissent sounds a similar theme. *Post,* at 174 ("a person with asbestosis will not be without a remedy for pain and suffering caused by cancer").

But the asbestosis claimants did not seek, and the trial court did not allow, discrete damages for their *increased risk* of future cancer. App. 573 ("[Y]ou cannot award damages to plaintiffs for cancer or for any increased risk of cancer."); see *supra,* at 143. Instead, the claimants sought damages for their *current* injury, which, they allege, encompasses a *present fear* that the toxic exposure causative of asbestosis may later result in cancer. The Government's *"when,* not *whether,"* argument has a large gap; it excludes recovery for the fear experienced by an asbestosis sufferer who never gets cancer. For such a person, the question is *whether,* not *when,* he may recover for his fear.

Even if the question is *whether,* not simply *when,* an asbestosis sufferer may recover for cancer fear, Norfolk has another string in its bow. To be compensable as pain and suffering, Norfolk maintains, a mental or emotional harm must have been "directly brought about by a physical injury." Brief for Petitioner 15 (emphasis deleted; internal quotation marks omitted) (quoting *Gottshall,* 512 U. S., at 544). Because asbestosis itself, as distinguished from asbestos expo-

termined, properly balanced a defendant's interest in repose and a plaintiff's interest in recovering adequate compensation for negligently inflicted injuries. See, *e. g., Wilson,* 684 F. 2d, at 119. There is no inevitable conflict between the "separate disease rule" and recovery of cancer *fear* damages by asbestosis claimants. The rule simply allows recovery for successive diseases and would necessarily exclude only double recovery for the same element of damages.

sure, does not generate cancer, Norfolk insists and the principal dissent agrees, "fear of cancer is too unrelated, as a matter of law, to be an element of [an asbestosis sufferer's] pain and suffering." Tr. of Oral Arg. 11; see *post*, at 172.[13] This argument elides over a key connection between Norfolk's conduct and the damages the asbestosis claimants allege as an element of their pain and suffering: Once found liable for "any bodily harm," a negligent actor is answerable in damages for emotional disturbance "resulting from the bodily harm *or from the conduct which causes it.*" Restatement § 456(a) (emphasis added).[14]

There is an undisputed relationship between exposure to asbestos sufficient to cause asbestosis, and asbestos-related cancer. Norfolk's own expert acknowledged that asbestosis puts a worker in a heightened risk category for asbestos-related lung cancer. App. 470 (affirming that "asbestosis has to be necessary before lung cancer is a problem"). See W. Morgan & A. Seaton, Occupational Lung Diseases 151 (3d ed. 1995) (hereinafter Morgan & Seaton) ("[H]eavy cumulative exposures to asbestos which lead to asbestosis increase the risk of developing lung cancer. . . . [T]here is now considerable evidence which indicates that the risk of lung cancer only increases when asbestosis is present."). See also *id.*, at 341 ("There is no doubt . . . that the presence of asbestosis, at least in smokers, is associated with a significantly in-

---

[13] But cf. *post*, at 187 (BREYER, J.) (recovery permissible when fear of cancer "detrimentally affects the plaintiff's ability to carry on with everyday life and work").

[14] See, *e. g., Baltimore & O. R. Co.* v. *McBride*, 36 F. 2d 841, 842 (CA6 1930) ("Where both the physical injury and the nervous shock are proximately caused by the same act of negligence, there is no necessity that the shock result exclusively from the physical injury."); see also Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 497, 504 (1922) ("Recovery has been allowed where there has been physical impact, but it has been frankly said that where there has been impact the damages recoverable are not limited to those resulting therefrom."); Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1048–1049 (1936).

creased rate of lung cancer."); A. Churg & F. Green, Pathology of Occupational Lung Disease 343 (2d ed. 1998) ("[S]tudies provide strong support for the notion that asbestosis is crucial to the development of asbestos-associated lung cancers.").

Furthermore, the asbestosis claimants' expert testified without contradiction to a risk notably "different in kind from the background risks that all individuals face," *post*, at 187 (BREYER, J.): Some "ten percent of the people who have the disease, asbestosis, have died of mesothelioma." App. 93; see Morgan & Seaton 350 ("The evidence suggests that, once the lungs of the susceptible subject have been primed by a sufficient dose of asbestos, then the development of [mesothelioma] is inevitable.").[15]  In light of this evidence, an asbestosis sufferer would have good cause for increased apprehension about his vulnerability to another illness from his exposure, a disease that inflicts "agonizing, unremitting pain," relieved only by death, *post*, at 168 (KENNEDY, J.): Asbestosis is "a chronic, painful and concrete reminder that [a

---

[15] The evidence at trial, Norfolk suggests, overstated the asbestosis claimants' cancer risk.  Brief for Petitioner 22–24, and nn. 18–20.  We do not sit to reweigh evidence based on information not presented at trial.  See *Tennant* v. *Peoria & Pekin Union R. Co.*, 321 U. S. 29, 35 (1944).  We note, however, that none of the studies to which Norfolk refers addresses the risk of cancer for persons with asbestosis.  Rather, they home in on the relationship between *asbestos exposure* and cancer.  See Morgan, Attitudes About Asbestos and Lung Cancer, 22 Am. J. Indus. Med. 437 (1992); Goodman, Morgan, Ray, Malloy, & Zhao, Cancer in Asbestos-Exposed Occupational Cohorts: A Meta-Analysis, 10 Cancer Causes & Control 453 (1999); Erren, Jacobsen, & Piekarski, Synergy Between Asbestos and Smoking on Lung Cancer Risks, 10 Epidemiology 405 (1999).  Norfolk further suggests that cancer risk from asbestos varies by fiber type.  Brief for Petitioner 24, and n. 19 (citing Morgan & Seaton 346–347).  Even if true, this suggestion is unavailing: Norfolk does not allege that it exposed the asbestosis claimants to the less toxic fiber type.  Finally, Norfolk argues that the studies quantifying cancer risk for workers with asbestosis cannot accurately be extrapolated to evaluate the risk for these particular asbestosis claimants.  Reply Brief 8–9, and n. 4.  Nothing impeded Norfolk from presenting this argument to the jury.

plaintiff] has been *injuriously* exposed to a substantial amount of asbestos, a reminder which may both qualitatively and quantitatively intensify his fear." *Eagle-Picher Industries, Inc.* v. *Cox*, 481 So. 2d, at 529.

Norfolk understandably underscores a point central to the Court's decision in *Metro-North.* Reply Brief 10. The Court's opinion in *Metro-North* stressed that holding employers liable to workers merely exposed to asbestos would risk "unlimited and unpredictable liability." 521 U. S., at 435 (internal quotation marks omitted) (quoting *Gottshall,* 512 U. S., at 557). But as earlier observed, see *supra,* at 147, *Metro-North* sharply distinguished exposure-only plaintiffs from "plaintiffs who suffer from a disease," and stated, unambiguously, that "[t]he common law permits emotional distress recovery for [the latter] category." 521 U. S., at 436; see *id.,* at 432. Commentary similarly distinguishes asymptomatic asbestos plaintiffs from plaintiffs who "developed asbestosis and thus suffered real physical harm." Henderson & Twerski, Asbestos Litigation Gone Mad: Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring, 53 S. C. L. Rev. 815, 830 (2002); see *id.,* at 830, 833–834 (classifying plaintiffs with pleural thickening as asymptomatic and observing that, unlike asbestosis sufferers, they face no "significantly increased risk of developing cancer" and do not "suffe[r] current pain that serves as a constant reminder that a more serious disease may come upon [them]").[16]

---

[16] Unconstrained by "the majority rule or the rule of the Restatement," *post,* at 177 (KENNEDY, J.), the principal dissent would erase the line drawn in *Metro-North* between exposure-only asbestos claimants, and those who "suffe[r] from a disease," 521 U. S., at 432. Repeatedly, that dissent recites as properly controlling here case law governing "stand-alone tort action[s] for negligent infliction of emotional distress." *Post,* at 171 (citing *Consolidated Rail Corporation* v. *Gottshall,* 512 U. S. 532 (1994)); see *post,* at 169 (quoting from *Metro-North's* justification for disallowing recovery to exposure-only asbestos claimants); 173 (bracketing exposure-only and asbestosis claimants); 177 (asbestosis claimants entitled

The categorical approach endorsed in *Metro-North* serves to reduce the universe of potential claimants to numbers neither "unlimited" nor "unpredictable." Relevant here, and as Norfolk recognizes, of those exposed to asbestos, only a fraction will develop asbestosis. Brief for Petitioner 22, n. 16 (quoting *In re Haw. Fed. Asbestos Cases*, 734 F. Supp. 1563, 1570 (Haw. 1990) ("A reasonable person, exercising due diligence, should know that of those exposed to asbestos, only a small percentage suffer from asbestos-related physical impairment.")); cf. Morgan & Seaton 319 (study showed that of persons exposed to asbestos after 1959, only 2 percent had asbestosis when first examined; for those exposed from 1950–1959, that figure is 18 percent).

## C

Norfolk presented the question "[w]hether a plaintiff who has asbestosis but not cancer can recover damages for fear of cancer under the [FELA] without proof of physical manifestations of the claimed emotional distress." Brief for Petitioner (i). Our answer is yes, with an important reservation. We affirm only the qualification of an asbestosis sufferer to seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages. It is incumbent upon such a complainant, however, to prove that his alleged fear is genuine and serious. See, *e. g.*, *Smith* v. *A. C. & S., Inc.*, 843 F. 2d 854, 859 (CA5 1988) ("general

---

to recover for fear of cancer only if they "make out a claim for negligent infliction of emotional distress; and they cannot do so"); 180 (quoting from *Gottshall*). But see *Metro-North*, 521 U. S., at 437 ("emotional distress damages sought by asbestosis-afflicted plaintiff" found to fit "within a category where the law already permitted recovery for mental distress").

The principal dissent gains no genuine aid from *Barron* v. *Martin-Marietta Corp.*, 868 F. Supp. 1203 (ND Cal. 1994), a decision it cites as authority for equating exposure-only and asbestosis claimants. See *post*, at 175. The *Barron* plaintiffs "adduced no evidence of exposure to a toxic substance which threatens cancer." 868 F. Supp., at 1205. When that is the case, we agree, cancer-fear damages are unavailable.

concern for [one's] future health" held insufficient to support recovery for an asbestosis sufferer's fear of cancer); *Coffman v. Keene*, 257 N. J. Super., at 293–294, 608 A. 2d, at 424–425 (sustaining a verdict including fear-of-cancer damages where trial judge found plaintiff "ha[d] a genuine, real believable fear of cancer" (internal quotation marks omitted)). See also Minneman, 50 A. L. R. 4th, §5, at 54–56, (discussing cases affirming the view that "apprehension must be genuine").[17] In this case, proof directed to that matter was notably thin,[18] and might well have succumbed to a straightforward sufficiency-of-the-evidence objection, had Norfolk so targeted its attack.

Norfolk, however, sought a larger shield. In the trial court and in its unsuccessful petition to the Supreme Court

---

[17] The asbestosis claimants here acknowledged that "a jury is entitled to consider the absence of physical manifestations [of alleged emotional disturbances] as evidence that a mental injury is less severe and therefore less deserving of a significant award." Brief for Respondents 17.

Considering the dissents' readiness to "develop a federal common law" to contain jury verdicts under the FELA, see *post*, at 170, 177, 181 (KENNEDY, J.); *post*, at 187 (BREYER, J.), it is curious that the principal dissent nevertheless questions the "basis in our FELA jurisprudence" for the requirement that claimants prove their alleged fear to be "genuine and serious," see *post*, at 180 (internal quotation marks omitted). In contrast to the principal dissent, JUSTICE BREYER appears ultimately to advance only an elaboration of the requirement that the plaintiff prove fear that is "genuine and serious." He would specify, additionally, that the fear "significantly and detrimentally affec[t] the plaintiff's ability to carry on with everyday life and work." *Post*, at 187. That elaboration, JUSTICE BREYER maintains, is "consistent with the sense of the common law." *Ibid.* The definition JUSTICE BREYER would give to the terms "genuine and serious" in this context was not aired in the trial court or in this Court. See *supra*, at 143, 148, and this page. We therefore resist ruling on it today.

[18] As Norfolk noted, one of the claimants did not testify to having any concern about cancer; another testified that he was more afraid of shortness of breath from his asbestosis than of cancer. Others testified to varying degrees of concern over developing the disease; no claimant presented corroborative objective evidence of his fear. Brief for Petitioner 9 (citing App. 116–117, 255, 277, 298–299, 332).

of Appeals of West Virginia, Norfolk urged that fear of cancer could figure in the recovery only if the claimant proved both a likelihood of developing cancer and physical manifestations of the alleged fear. See App. 548 (Norfolk's charge request); *id.*, at 634 (amended petition for appeal). And although Norfolk submitted proposed verdict forms, *id.*, at 549–560, those forms did not call for jury specification of the amount of damages, if any, awarded for fear of cancer. Thus, as earlier observed, *supra*, at 144, it is impossible to tell from the verdicts returned whether the jury ascribed any part of the damages awards to the alleged cancer fear, and if so, how much.[19]

We did not grant review, in any event, to judge the sufficiency of the evidence or the reasonableness of the damages awards. We rule, specifically and only, on the question whether this case should be aligned with those in which fear of future injury stems from a current injury, or with those presenting a stand-alone claim for negligent infliction of emotional distress. We hold that the former categorization is the proper one under the FELA.

## IV

We turn next to Norfolk's contention that the trial court erred in instructing the jury "not to make a deduction [from damages awards] for the contribution of non-railroad [asbestos] exposures" to the asbestosis claimants' injuries. App. 570. The statutory language, however, supports the trial court's understanding that the FELA does not authorize ap-

---

[19] In their prediction that adhering to the line drawn in *Gottshall* and *Metro-North* will, in this setting, bankrupt defendants, see *post*, at 168–169 (KENNEDY, J.); *post*, at 186 (BREYER, J.), the dissents largely disregard, *inter alia*, the verdict control devices available to the trial court. These include, on a defendant's request, a charge that each plaintiff must prove any alleged fear to be genuine and serious, review of the evidence on damages for sufficiency, and particularized verdict forms. Norfolk chose not to seek control measures of this order; instead, Norfolk sought to place cancer-fear damages entirely outside the jury's ken. See *supra*, at 143, 147.

portionment of damages between railroad and nonrailroad causes. Section 1 of the Act, to which we earlier referred, see *supra*, at 144–145, provides:

> "Every common carrier by railroad while engaging in [interstate commerce], shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of . . . such carrier . . . ."  45 U. S. C. § 51.

The claimants here suffer from asbestosis (an "injury"), which is linked to their employment with Norfolk and "result[ed] in whole or in part from . . . negligence" by Norfolk. Norfolk is therefore "liable in damages . . . *for such injury.*" *Ibid.* (emphasis added). Nothing in the statutory text instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit.

Resisting this reading, Norfolk trains on the statutory language conveying that a railroad is liable only for injuries an employee sustains "while he is employed by such carrier." *Ibid.* That language, Norfolk maintains, "makes clear that railroads are not liable for employee injuries that result from outside causes." Brief for Petitioner 32. Norfolk's argument uncouples the statutory language from its context, and thereby obscures its meaning.

The FELA applies to railroads only "while [they are] engaging in" interstate commerce. 45 U. S. C. § 51. The clause on which Norfolk relies clarifies that the statute's reach is correspondingly limited to injuries sustained *by railroad employees* while the employees are themselves engaged *"in such commerce." Ibid.* (emphasis added); cf. *The Employers' Liability Cases*, 207 U. S. 463, 504 (1908) (predecessor statute declared unconstitutional because it regulated employee injuries not sufficiently related to interstate commerce). Placed in context, the clause does not speak to

cases in which an injury has multiple causes, some related to railroad employment and others unrelated to that employment. Such cases, we think, are controlled by the language just noted, which states that the railroad is "liable in damages" so long as the injury was caused "in whole or in part" by its "negligence." 45 U. S. C. § 51.

The statutory context bolsters our reading, for interpreting § 1 to require apportionment would put that provision in tension with the rest of the statute. As recounted earlier, see *supra*, at 145, several of the FELA's provisions expand a railroad's liability by abolishing common-law defenses that limited employees' ability to recover against their employers. Among the innovations, the Act expressly directs apportionment of responsibility between employer and employee based on comparative fault. See § 53 (set out in relevant part *supra*, at 144, n. 6). The statute expressly prescribes no other apportionment.

Essentially, then, Norfolk asks us to narrow employer liability without a textual warrant. Reining in employer liability as Norfolk proposes, however, is both unprovided for by the language of the FELA and inconsistent with the Act's overall recovery facilitating thrust. Accordingly, we find Norfolk's plea an untenable reading of the congressional silence. Cf. *Edmonds* v. *Compagnie Generale Transatlantique*, 443 U. S. 256, 268, n. 23 (1979) ("It would be particularly curious for Congress to refer expressly to the established principle of comparative negligence, yet say not a word about adopting a new rule limiting the liability of the [defendant] on the basis of [another party's] negligence.").

Norfolk's view also runs counter to a century of FELA jurisprudence. No FELA decision made by this Court so much as hints that the statute mandates apportionment of damages among potentially liable tortfeasors. Indeed, *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500 (1957), suggests the opposite. In *Rogers*, we described as "irrelevant" the question "whether the immediate reason" for an employee's

injury was the proven negligence of the defendant railroad or "some cause not identified from the evidence." *Id.*, at 503; see *id.*, at 508 ("[T]he inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit."). But if the FELA required apportionment among potentially liable tort-feasors, the existence of contributing causes would be highly relevant.

Also significant is the paucity of lower court authority for the proposition that the FELA contemplates apportionment. The federal and state reporters contain numerous FELA decisions stating that railroad employers may be held jointly and severally liable for injuries caused in part by the negligence of third parties,[20] and even more recognizing that FELA defendants may bring indemnification and contribution actions against third parties under otherwise applicable state or federal law.[21] Those third-party suits would have

[20] See, *e. g.*, *Jenkins* v. *Southern Pac. Co.*, 17 F. Supp. 820, 824–825 (SD Cal. 1937), rev'd on other grounds, 96 F. 2d 405 (CA9 1938); *Gilbert* v. *CSX Transp., Inc.*, 197 Ga. App. 29, 32, 397 S. E. 2d 447, 450 (1990); *Lewis* v. *National R. Passenger Corp.*, 176 Misc. 2d 947, 948–951, 675 N. Y. S. 2d 504, 505–507 (Civil Ct. 1998); *Gaulden* v. *Burlington No., Inc.*, 232 Kan. 205, 210–211, 654 P. 2d 383, 389 (1982); *Southern R. Co.* v. *Blanton*, 63 Ga. App. 93, 100, 10 S. E. 2d 430, 436 (1940); *Demopolis Tel. Co.* v. *Hood*, 212 Ala. 216, 218, 102 So. 35, 37 (1924); *Lindsay* v. *Acme Cement Plaster Co.*, 220 Mich. 367, 376, 190 N. W. 275, 278 (1922); *Louisville & Nashville R. Co.* v. *Allen*, 67 Fla. 257, 269–272, 65 So. 8, 12 (1914).

[21] See, *e. g.*, *Mills* v. *River Term. R. Co.*, 276 F. 3d 222, 224 (CA6 2002); *Gaines* v. *Illinois Central R. Co.*, 23 F. 3d 1170, 1171 (CA7 1994); *Ellison* v. *Shell Oil Co.*, 882 F. 2d 349, 352–354 (CA9 1989); *Alabama Great Southern R. Co.* v. *Chicago & Northwestern R. Co.*, 493 F. 2d 979, 983 (CA8 1974); *Southern R. Co.* v. *Foote Mineral Co.*, 384 F. 2d 224, 227–228 (CA6 1967); *Kennedy* v. *Pennsylvania R. Co.*, 282 F. 2d 705, 708–709 (CA3 1960); *Ft. Worth & Denver R. Co.* v. *Threadgill*, 228 F. 2d 307, 311–312 (CA5 1955); *Patterson* v. *Pennsylvania R. Co.*, 197 F. 2d 252, 253 (CA2 1952); *Stephens* v. *Southern Pacific Transp. Co.*, 991 F. Supp. 618, 620 (SD Tex. 1998); *Tucker* v. *Reading Co.*, 335 F. Supp. 1269, 1271 (ED Pa. 1971); *Reynolds* v. *Southern R. Co.*, 320 F. Supp. 1141, 1142–1143 (ND Ga. 1969); *Spielman* v. *New York, New Haven & Hartford R. Co.*, 147 F. Supp. 451, 453–454

been unnecessary had the FELA itself authorized apportionment. Norfolk identifies only one FELA decision supporting its position: *Dale* v. *Baltimore & Ohio R. Co.*, 520 Pa. 96, 105–107, 552 A. 2d 1037, 1041–1042 (1989). But *Dale* cited no previous decisions on point and has not been followed by any other court. It is therefore a reed too slim to overcome the statutory language and the otherwise consistent historical practice in the lower courts.

The conclusion that the FELA does not mandate apportionment is also in harmony with this Court's repeated statements that joint and several liability is the traditional rule. In an 1876 admiralty case, for example, we wrote:

> "Nothing is more clear than the right of a plaintiff, having suffered . . . a loss [of cargo], to sue in a common-law action all the wrong-doers, or any one of them, at his election; and it is equally clear, that, if he did not contribute to the disaster, he is entitled to judgment in either case for *the full amount of his loss.*" *The "Atlas,"* 93 U. S. 302, 315 (1876) (emphasis added).

See 42 Cong. Rec. 4536 (1908) (remarks of Sen. Dolliver) (the FELA was intended to "brin[g] our jurisprudence up to the liberal interpretations that . . . now prevail in the admiralty courts of the United States"). See also *Miller* v. *Union Pacific R. Co.*, 290 U. S. 227, 236 (1933) (describing joint and several liability as "settled by innumerable authorities" and

(EDNY 1956); *Engvall* v. *Soo Line R. Co.*, 632 N. W. 2d 560, 568 (Minn. 2001); *Freeman* v. *Norfolk Southern R. Co.*, 97–2013 (La. App. 5/13/98), 714 So. 2d 832, 835; *In re Bean*, 171 Ill. App. 3d 620, 623, 525 N. E. 2d 1231, 1234 (1988); *Narcise* v. *Illinois Central Gulf R. Co.*, 427 So. 2d 1192, 1195 (La. 1983); *Walter* v. *Dow Chemical Co.*, 37 Mich. App. 728, 729–732, 195 N. W. 2d 323, 324–325 (1972); *Gulf, Mobile & Ohio R. Co.* v. *Arthur Dixon Transfer Co.*, 343 Ill. App. 148, 153–155, 98 N. E. 2d 783, 785–786 (1951); *Seaboard Air Line R. Co.* v. *American Dist. Elec. Protective Co.*, 106 Fla. 330, 333, 143 So. 316, 317 (1932); Lewter, Right of Railroad, Charged with Liability for Injury to or Death of Employee Under Federal Employers' Liability Act, to Claim Indemnity or Contribution from Other Tortfeasor, 19 A. L. R. 3d 928 (1968 and Supp. 2002).

citing federal decisions from 1883, 1893, 1894, 1895, 1902, 1904, 1906, 1910, and 1913); *Edmonds*, 443 U. S., at 260 (joint and several liability remains the rule in admiralty).

Norfolk nonetheless maintains that "[a]pportionment was the common-law rule at the time of FELA's enactment" in 1908. Brief for Petitioner 32. This Court's repeated statements concerning joint and several liability refute that contention. Many of Norfolk's historical authorities, moreover, address the *procedural* question whether two defendants may be sued in one action, rather than the *substantive* one whether each negligent defendant is liable in full for a plaintiff's injury. These "separate problems," Dean Prosser cautioned, "require separate consideration, and have very little in common." Joint Torts and Several Liability, 25 Calif. L. Rev. 413 (1937). While "[t]he common law rules as to [procedural] joinder were extremely strict," *id.*, at 414, "the common law [also] developed . . . a distinct and altogether unrelated principle: a defendant might be liable for the entire loss sustained by the plaintiff, even though his negligence concurred or combined with that of another to produce the result" and even where "no [procedural] joinder would have been possible," *id.*, at 418.

Looking beyond historical practice, Norfolk contends that the modern trend is to apportion damages between multiple tortfeasors. Brief for Petitioner 40–43. The state of affairs when the FELA was enacted, however, is the more important inquiry. See, *e. g., Monessen Southwestern R. Co.* v. *Morgan*, 486 U. S. 330, 336–339 (1988) (prejudgment interest is not available under the FELA because it was unavailable at common law when the statute was enacted). At any rate, many States retain full joint and several liability, see Restatement (Third) of Torts, Apportionment of Liability § 17, Reporters' Note, table, pp. 151–152 (1999), even more retain it in certain circumstances, *id.*, tables, at 153–159, and most of the recent changes away from the traditional rule have come through legislative enactments rather than judicial de-

velopment of common-law principles, see *id.*, § B18, Reporters' Note. Congress, however, has not amended the FELA. Cf. *Edmonds*, 443 U. S., at 273 ("Once Congress has relied upon conditions that the courts have created, we are not as free as we would otherwise be to change them.").[22]

Finally, reading the FELA to require apportionment would handicap plaintiffs and could vastly complicate adjudications, all the more so if, as Norfolk sometimes suggests, see Brief for Petitioner 50, Reply Brief 20, manufacturers and suppliers, as well as other employers, should come within the apportionment pool. See *Sinkler*, 356 U. S., at 329 ("The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier."). Once an employer has been adjudged negligent with respect to a given injury, it accords with the FELA's overarching purpose to require the employer to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them.[23]

Under the FELA, an employee who suffers an "injury" caused "in whole or in part" by a railroad's negligence may

---

[22] Norfolk also suggests an analogy between the FELA and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U. S. C. § 9601 *et seq.*, under which many courts have held that apportionment is available in some circumstances. Brief for Petitioner 44–45. But CERCLA's structure, purpose, and more recent vintage may differentiate that measure from the FELA in ways relevant to the question presented. See Brief for United States as *Amicus Curiae* 6, n. 1. We need not and do not express any view on apportionment in the CERCLA context.

[23] Norfolk submits that requiring employers to sue for contribution will be "wasteful," Brief for Petitioner 47, but FELA defendants may be able to implead third parties and thus secure resolution of their contribution actions in the same forum as the underlying FELA actions. See, *e. g.*, *Ellison* v. *Shell Oil Co.*, 882 F. 2d, at 350 (railroad sued by employee under the FELA filed a third-party complaint against another party); *Engvall* v. *Soo Line R. Co.*, 632 N. W. 2d, at 563 (same).

recover his or her full damages from the railroad, regardless of whether the injury was also caused "in part" by the actions of a third party. Because the asbestosis claimants suffer such an "injury," we conclude that the instruction challenged here was not erroneous.

\*     \*     \*

The "elephantine mass of asbestos cases" lodged in state and federal courts, we again recognize, "defies customary judicial administration and calls for national legislation." *Ortiz* v. *Fibreboard Corp.*, 527 U. S. 815, 821 (1999); see Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation 3, 27–35 (Mar. 1991) (concluding that effective reform requires federal legislation creating a national asbestos dispute-resolution scheme); *id.*, at 42 (dissenting statement of Hogan, J.) (agreeing that "a national solution is the only answer" and suggesting "passage by Congress of an administrative claims procedure similar to the Black Lung legislation"). Courts, however, must resist pleas of the kind Norfolk has made, essentially to reconfigure established liability rules because they do not serve to abate today's asbestos litigation crisis. Cf. *Metro-North*, 521 U. S., at 438 ("[C]ourts . . . must consider the general impact . . . of the general liability rules they . . . create.").

For the reasons stated, the judgment of the Circuit Court of Kanawha County is

*Affirmed.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE, JUSTICE O'CONNOR, and JUSTICE BREYER join, concurring in part and dissenting in part.

The Court is correct, in my view, in rejecting the claim that damages awarded under the Federal Employers' Liability Act (FELA or Act) must be apportioned according to causal contribution among even absent joint tortfeasors. Parts I, II, and IV of its opinion have my full assent.

It is otherwise as to Part III. The Court allows compensation for fear of cancer to those who manifest symptoms of some other disease, not itself causative of cancer, though stemming from asbestos exposure. The Court's precedents interpreting FELA neither compel nor justify this result. The Court's ruling is not based upon a sound application of the common-law principles that should inform our decisions implementing FELA. On the contrary, those principles call for a different rule, one which does not yield such aberrant results in asbestos exposure cases. These reasons require my respectful dissent.

I

It is common ground that the purpose of FELA is to provide compensation for employees protected under the Act. *Ante,* at 144–145. The Court's decision is a serious threat to that objective. Although a ruling that allows compensation for fear of a disease might appear on the surface to be solicitous of employees and thus consistent with the goals of FELA, the realities of asbestos litigation should instruct the Court otherwise.

Consider the consequences of allowing compensation for fear of cancer in the cases now before the Court. The respondents are between 60 and 77 years old. All except one have a long history of tobacco use, and three have smoked for more than 50 years. They suffer from shortness of breath, but only one testified that it affects his daily activities. As for emotional injury, one of the respondents complained that his shortness of breath caused him to become depressed; the others stated, in response to questions from their attorneys, that they have some "concern" about their health and about cancer. For this, the jury awarded each respondent between $770,640 and $1,230,806 in damages, reduced by the trial court to between $523,605 and $1,204,093 to account for the comparative negligence of the respondents' cigarette use.

Contrast this recovery with the prospects of an employee who does not yet have asbestosis but who in fact will develop asbestos-related cancer. Cancers caused by asbestos have long periods of latency. Their symptoms do not become manifest for decades after exposure. See Selikoff et al., Latency of Asbestos Disease Among Insulation Workers in the United States and Canada, 46 Cancer 2736, 2740 (1980) (lung cancer becomes manifest 15–24 years after exposure); A. Churg & F. Green, Pathology of Occupational Lung Disease 350 (2d ed. 1998) ("The latency period for asbestos-induced mesothelioma is long, with a mean value of 30 to 40 years"); see generally Mustacchi, Lung Cancer Latency and Asbestos Liability, 17 J. Legal Med. 277 (June 1996) (discussing the pathogenesis of asbestos-related carcinomata). These cancers inflict excruciating pain and distress—pain more severe than that associated with asbestosis, distress more harrowing than the fear of developing a future illness.

One who has mesothelioma, in particular, faces agonizing, unremitting pain in the lungs, which spreads throughout the thoracic cavity as tumors expand and metastasize. See W. Morgan & A. Seaton, Occupational Lung Diseases 353 (3d ed. 1995). The symptoms do not subside. Their severity increases, with death the only prospect for relief. And death is almost certain within a short time from the onset of mesothelioma. See *ibid.* ("Death usually occurs within 18 months to 2 years . . . . A minority of patients, somewhere around 15%, survive 3 to 4 years"). Yet the majority's decision endangers this employee's chances of recovering any damages for the simple reason that, by the time the worker is entitled to sue for the cancer, the funds available for compensation in all likelihood will have disappeared, depleted by verdicts awarding damages for unrealized fear, verdicts the majority is so willing to embrace.

This Court has recognized the danger that no compensation will be available for those with severe injuries caused by asbestos. See *Amchem Products, Inc.* v. *Windsor*, 521

U. S. 591, 598 (1997) ("'[E]xhaustion of assets threatens and distorts the process; and future claimants may lose altogether'" (quoting Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation 2–3 (Mar. 1991))); 521 U. S., at 632 (BREYER, J., concurring in part and dissenting in part). In fact the Court already has framed the question that should guide its resolution of this case:

> "In a world of limited resources, would a rule permitting immediate large-scale recoveries for widespread emotional distress caused by fear of future disease diminish the likelihood of recovery by those who later suffer from the disease?" *Metro-North Commuter R. Co.* v. *Buckley,* 521 U. S. 424, 435–436 (1997).

The Court ignores this question and its warning. It is only a matter of time before inability to pay for real illness comes to pass. The Court's imprudent ruling will have been a contributing cause to this injustice.

Asbestos litigation has driven 57 companies, which employed hundreds of thousands of people, into bankruptcy, including 26 companies that have become insolvent since January 1, 2000. See RAND Institute for Civil Justice, S. Carroll et al., Asbestos Litigation Costs and Compensation: An Interim Report 71 (2002), Petitioner's Supplemental Lodging, p. SL82. With each bankruptcy the remaining defendants come under greater financial strain, see Edley & Weiler, Asbestos: A Multi-Billion-Dollar Crisis, 30 Harv. J. Legis. 383, 392 (1993); M. Plevin & P. Kalish, What's Behind the Recent Wave of Asbestos Bankruptcies? 16 Mealey's Litigation Report: Asbestos 35 (Apr. 20, 2001), and the funds available for compensation become closer to exhaustion, see Schuck, The Worst Should Go First: Deferral Registries in Asbestos Litigation, 15 Harv. J. L. & Pub. Pol'y 541, 547 (1992).

In this particular universe of asbestos litigation, with its fast diminishing resources, the Court's wooden determina-

tion to allow recovery for fear of future illness is antithetical to FELA's goals of ensuring compensation for injuries. Cf. *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532, 555 (1994) (describing FELA's "central focus on physical perils"); *Metro-North, supra*, at 430 (noting that *Gottshall* relied upon cases involving "a threatened physical contact that caused, or might have caused, immediate traumatic harm"). As a consequence of the majority's decision, it is more likely that those with the worst injuries from exposure to asbestos will find they are without remedy because those with lesser, and even problematic, injuries will have exhausted the resources for payment. Today's decision is not employee protecting; it is employee threatening.

## II

When the Court asks whether the rule it adopts has been settled by the common law, the answer, in my view, must be no. The issue before us is new and unsettled, as is evident from the diverse approaches of state and federal courts to this problem. In its comprehensive discussion, the majority cites some authorities that, it must be acknowledged, could be interpreted to support the Court's position. The result it reaches, however, is far from inevitable, and the rule the majority derives does not comport with our responsibility to develop a federal common law that administers FELA in an effective, principled way.

## A

I disagree with the Court's conclusion that damages for fear of cancer may be recovered as part of the pain and suffering caused by asbestosis. *Ante*, at 148. The majority observes that a person who suffers from "a disease" may recover for all "related" emotional distress. *Ante*, at 147 (courts "'do permit a plaintiff *who suffers from a disease* to recover for related negligently caused emotional distress'" (quoting *Metro-North, supra*, at 432)). While that may be true as a general matter, it begs the question: What relation-

ship between a disease and associated emotional distress should entitle a person to compensation for the distress as pain and suffering?

The Court's precedent applying FELA provides the answer. To qualify as compensable pain and suffering, a person's emotional distress must be the direct consequence of an injury or condition. See *Gottshall*, 512 U. S., at 544 ("[T]hese terms traditionally have been used to describe sensations stemming directly from a physical injury or condition" (internal quotation marks omitted)). Damages for emotional harms that are less direct may be recovered only pursuant to a stand-alone tort action for negligent infliction of emotional distress. *Ibid.* (defining negligently inflicted emotional distress as "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury").

The common law accords with this rule. The weight of authority defines pain and suffering as emotional distress that is the direct consequence of an injury. See Minneman, Future Disease or Condition, or Anxiety Relating Thereto, as Element of Recovery, 50 A. L. R. 4th 13, 25 (1986) ("[T]he fear that an existing injury will lead to the future onset of an as yet unrealized disease or condition is an element of recovery only where such distress . . . is the natural consequence of, or reasonably expected to flow from, the injury"); see also Restatement (Second) of Torts § 456(a) (1963–1964) (hereinafter Restatement) (tortfeasor liable for "fright, shock, or other emotional disturbance resulting from the bodily harm or from the conduct which causes it").

This category of emotional distress includes certain types of fears. The fright that accompanies a dog bite or a radiation burn, for example, may be said to result from an injury because it arises without any intervening cause, such as a medical examination. See *The Lord Derby*, 17 F. 265, 267 (ED La. 1883) ("To many people the shock to the system resulting from the most insignificant bite of a dog drawing

blood is such that no money compensation is adequate"). The passage in the Restatement deeming compensable "emotional disturbance resulting from the bodily harm or from the conduct which causes it," § 456(a), refers, as the official commentary makes clear, to this sort of instantaneous emotional trauma arising from the tortious act. See *id.*, Comment *e* ("Thus one who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, but also for his fright at seeing the car about to hit him").

Other, less immediate fears also might qualify as pain and suffering, but only if they are the direct result of an injury. See *id.*, § 456, Comment *d* (clarifying that recovery is "not limited to immediate emotional disturbance accompanying the bodily harm, or following at once from it, but includes also subsequent emotional disturbance brought about by the bodily harm itself").

Applying these standards to the instant case, I do not think the brooding, contemplative fear the respondents allege can be called a direct result of their asbestosis. Unlike shortness of breath or other discomfort asbestosis may cause, their fear does not arise from the presence of disease in their lungs. Instead, the respondents' fear is the product of learning from a doctor about their asbestosis, receiving information (perhaps at a much later time) about the conditions that correlate with this disease, and then contemplating how these possible conditions might affect their lives.

The majority nevertheless would permit recovery because "[t]here is an undisputed relationship between exposure to asbestos sufficient to cause asbestosis, and asbestos-related cancer." *Ante*, at 154. To state that some relationship exists without examining whether the relationship is enough to support recovery, however, ignores the central issue in this case. There is a fundamental premise in this case—conceded, as I understand it, by all parties—and it is this: There is no demonstrated causal link between asbestosis and can-

cer. See Churg & Green, Pathology of Occupational Lung Disease, at 313. The incidence of asbestosis correlates with the less-frequent incidence of cancer among exposed workers, *ibid.*, but this does not suffice. Correlation is not causation. Absent causation, it is difficult to conceive why asbestosis is any more than marginally more suitable a predicate for recovering for fear of cancer than the fact of mere exposure. This correlation the Court relies upon does not establish a direct link between asbestosis and asbestos-related cancer, and it does not suffice under common-law precedents as a predicate condition for recovery of damages based upon fear.

It must be conceded that courts in some common-law jurisdictions have ruled that fear of cancer is compensable as pain and suffering before the cancer is diagnosed, but the majority's extensive citations are not that persuasive. The Court collects cases from 12 jurisdictions that comport with its result, but only 5 of these were decided by the high court of a State. *Ante*, at 150–151, and n. 11. Moreover, three would allow recovery for fear of cancer predicated upon mere exposure to asbestos, see *Denton* v. *Southern R. Co.*, 854 S. W. 2d 885, 889 (Tenn. App. 1993) (citing *Hagerty* v. *L & L Marine Servs., Inc.*, 788 F. 2d 315, 318 (CA5 1986)); *Lavelle* v. *Owens-Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 11, 14, 507 N. E. 2d 476, 480 (Ct. Common Pleas, Cuyahoga Cty. 1987); *Devlin* v. *Johns-Manville Corp.*, 202 N. J. Super. 556, 563, 495 A. 2d 495, 499 (1985), a result contrary to our own holding in *Metro-North*. Five more appear to allow recovery with the onset of pleurisy, see *Capital Holding Corp.* v. *Bailey*, 873 S. W. 2d 187, 194 (Ky. 1994); *Beeman* v. *Manville Corp. Asbestos Disease Compensation Fund*, 496 N. W. 2d 247, 250 (Iowa 1993); *Celotex Corp.* v. *Wilson*, 607 A. 2d 1223, 1229–1230 (Del. 1992); *Mauro* v. *Raymark Industries, Inc.*, 116 N. J. 126, 129–130, 561 A. 2d 257, 258–259 (1989); *Wolff* v. *A-One Oil, Inc.*, 216 App. Div. 2d 291, 292, 627 N. Y. S. 2d 788, 789–790 (1995), again a result even today's Court would

reject, *ante*, at 153–156, and n. 14. In the end, cases from only five of those jurisdictions support the majority's analysis, none of them decided by a state high court.

On the other hand, as the majority acknowledges, some courts have ruled that fear of cancer should not be compensable as pain and suffering. *Ante*, at 151–152, n. 11. These decisions are based, in part, upon the "separate disease rule," which allows a person who has recovered for injuries resulting from asbestosis to bring a new lawsuit—notwithstanding the traditional common-law proscription against splitting a cause of action—if cancer develops. See *Wilson* v. *Johns-Manville Sales Corp.*, 684 F. 2d 111, 120–121 (CADC 1982) (Ginsburg, J.). The rule has been adopted by a majority of jurisdictions, see Henderson & Twerski, Asbestos Litigation Gone Mad: Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring, 53 S. C. L. Rev. 815, 821, and n. 22 (2002) (collecting cases), and the Court does not suggest that it would not apply in cases brought under FELA.

The separate disease rule is pertinent for at least two reasons. First, it illustrates that courts have found it necessary to construct fair and sensible common-law rules for resolving the problems particular to asbestos litigation. Second, it establishes that a person with asbestosis will not be without a remedy for pain and suffering caused by cancer. That person can and will be compensated if the cancer develops. This eliminates the need courts might otherwise perceive to avert the danger that relief might be foreclosed in the future.

The Supreme Court of Pennsylvania reached this conclusion, and its reasoning deserves attention when the Court suggests the common law is so well settled:

> "[D]amages for fear of cancer are speculative. The awarding of such damages would lead to inequitable results since those who never contract cancer would obtain damages even though the disease never came into fruition.

·          ·          ·          ·          ·

"In any case, Appellants are not left without a remedy for their mental anguish. [Pennsylvania case law] permits an action to be commenced if cancer develops. It is in this action that Appellants can assert their emotional distress or mental anguish claims. To allow the asbestos plaintiff in a non-cancer claim to recover for any part of the damages relating to cancer, including the fear of contracting cancer, erodes the integrity of and purpose behind the [separate] disease rule." *Simmons* v. *Pacor, Inc.*, 543 Pa. 664, 677–678, 674 A. 2d 232, 238–239 (1996).

This analysis is persuasive because it accounts, in a way that the majority's decision does not, for changes already underway in common-law rules for compensating victims of a disease with a long latency period. This approach surely is more likely to result in an equitable allotment of compensation than the decision of the Court; and this is the rule the Court should adopt to govern the availability of damages for fear of cancer under FELA.

Pennsylvania is not alone in rejecting the majority's view. In a careful opinion applying California law, the United States District Court for the Northern District of California held that parasitic damages for fear of cancer may be recovered only where there is a verifiable causal nexus between the injury suffered and the cancer feared. *Barron* v. *Martin-Marietta Corp.*, 868 F. Supp. 1203, 1211–1212 (1994). The court recognized that California courts had not yet addressed the type of physical injury that would permit compensation for fear of cancer, see *id.*, at 1210, n. 9, but it determined that the requirement of a causal nexus was a clear implication of recent California Supreme Court precedent, see *id.*, at 1212 (citing *Potter* v. *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 863 P. 2d 795 (1993)). The justification for this prerequisite is significant in this case as well:

> "If no nexus were required between cancer and an alleged injury, an injury akin to a spinal puncture, serious but unrelated to cancer, would admit recovery of parasitic damages for fear of cancer. Indeed, any serious physical injury, however unrelated to cancer, would permit fear-of-cancer damages." 868 F. Supp., at 1211.

The proofs offered by the claimants in *Barron* were insufficient on summary judgment to meet that burden under California law, and the respondents in today's case also would be incapable of recovering under that standard.

Other common-law authorities the majority cites do not compel a contrary result. It is of no help to the respondents that "mental anguish related to a physical injury is recoverable even if 'the underlying future prospect is not itself compensable inasmuch as it is not sufficiently likely to occur.'" *Ante*, at 149 (quoting Minneman, 50 A. L. R. 4th, at 25). This principle cannot sustain an award when, as here, there is a tangential, and no causal, relationship between the present injury suffered and the future disease feared. *Ibid.* ("Thus, damages for mental anguish concerning the chance that a future disease or condition will result from an original injury are generally not recoverable where the connection between the anxiety and the existing injury is too remote or tenuous").

The respondents' characterization, furthermore, finds no support in the part of the Restatement quoted by the majority. *Ante*, at 154 ("[A] negligent actor is answerable in damages for emotional disturbance 'resulting from the bodily harm *or from the conduct which causes it'*" (quoting Restatement § 456(a))). As described *supra*, at 171–172, the commentary suggests that this statement would allow recovery for direct or immediate emotional trauma resulting from a tortious act, see Restatement § 456(a), Comment *e*. The respondents do not claim to have experienced any shock or trauma arising from their exposure to asbestos or from the onset of their asbestosis. With almost no variation, they

complained only of concern, for which the Restatement provides no guidance as to whether damages should be awarded.

More important, while the disagreement among state courts about how to address this problem is telling, it is important to keep in mind the nature of the Court's responsibility under FELA. The implementation of the Act is a matter of federal common law, see *Urie* v. *Thompson*, 337 U. S. 163, 173 (1949), and it is for the Court to develop and administer a fair and workable rule of decision, see *Brady* v. *Southern R. Co.*, 320 U. S. 476, 479 (1943) ("[T]he question must be determined by this Court finally"); see also *Gottshall*, 512 U. S., at 558 (SOUTER, J., concurring) ("That duty is to develop a federal common law of negligence under FELA, informed by reference to the evolving common law"). State-court precedent is not dispositive. See *Dice* v. *Akron, C. & Y. R. Co.*, 342 U. S. 359, 361 (1952) ("State laws are not controlling in determining what the incidents of this federal right shall be"). Instead, the Court is bound only by the terms of FELA and its own precedent giving meaning to the Act. Within those constraints, the Court must endeavor to arrive at the correct rule—a rule that is just and practical—rather than the majority rule or the rule of the Restatement.

These considerations establish the proper rule for the case. Although the anxiety generated by an increased awareness about a disease may be real and painful, it lacks the direct link to a physical injury that suffices for recovery. Cf. *Metro-North*, 521 U. S., at 432 (denying fear-of-cancer recovery where condition "causes emotional distress only because the worker learns that he may become ill after a substantial period of time"). The respondents' entitlement to compensation for their fear of cancer turns upon their ability to make out a claim for negligent infliction of emotional distress; and they cannot do so.

## B

If viewed as alleging negligent infliction of emotional distress, the respondents' claims fail for the same reasons the Court disallowed recovery in *Metro-North.* There, the employee was exposed to massive amounts of asbestos for one hour of each working day for three years. See *id.,* at 427. He presented testimony about his fear of developing cancer. *Ibid.* Two expert witnesses testified that the employee's fear was at least reasonable because his exposure to asbestos increased the likelihood of contracting cancer, after discount-. ing for a 15-year tobacco habit, by between one and five percent. *Ibid.*

Despite these indications of genuine emotional distress, the Court held the exposure did not satisfy the "zone of danger" test and denied any recovery for fear of cancer. *Id.,* at 430. The Court explained that the claim implicated the traditional concerns underlying common-law restrictions upon recovery for emotional distress. See *id.,* at 433. The distress the employee alleged, including his emotional reaction to an incremental, increased risk of dying from cancer, was beyond the ability of a jury to evaluate with precision, heightening the danger that damages would be based upon speculation or caprice, see *id.,* at 435.

The respondents' claims implicate these considerations to the same or greater degree than in *Metro-North.* Each respondent seeks damages for his emotional response to being told he has an increased likelihood of dying. *Ibid.* The extent of the distress the respondents suffered is not calculable with a precision sufficient to permit juries to award damages, for the distress is simply incremental from the fears already shared by the general population.

The respondents observe, with extensive support in the medical literature, that a person with asbestosis has a 10 percent chance of developing mesothelioma, and that 39 percent of smokers with asbestosis develop fatal lung cancer; that cohort, however, drops to 5 percent, at most, for non-

smokers with asbestosis. While these statistics might at first appear to provide the beginning of an argument for giving asbestosis sufferers recovery for fear, the average American male has a 44 percent chance of developing cancer during the course of his life, and his chance of dying from some form of cancer is more than 21 percent. See L. Ries et al., National Cancer Institute, SEER Cancer Statistics Rev., 1973–1999, Tables I–15, I–16 (2002), available at http://seer.cancer.gov/csr/1973_1999/overview.pdf (as visited Feb. 10, 2003) (available in Clerk of Court's case file). This literature also suggests that a person who smokes has more than a 50 percent chance of dying from a disease caused by tobacco use, see National Cancer Institute, Changes in Cigarette-Related Disease Risks & Their Implication for Prevention and Control, Smoking & Tobacco Control Monograph, No. 8, 1997, p. xi, Table 1, a risk that all but one of the respondents has incurred that is wholly separate from their exposure to asbestos.

It is beyond the ability of juries to derive from statistics like these a fair estimate of the danger caused by negligent exposure to asbestos. See *Metro-North, supra,* at 435. For this reason, the trial judge was correct to instruct the jury that they could not award the respondents any damages for cancer or for an increased risk of cancer. In disallowing recovery for risk but allowing recovery for fear based on that risk, however, the trial judge attempted to avoid speculation at the outset but succumbed to added speculation in the end. If instructing a jury to calculate an increased risk of cancer invites speculation, then asking the jury to infer from its estimate a rough sense of the fear based on the risk invites speculation compounded.

The damages the jury awarded in this case indicate the legitimacy of these concerns. As described above, *supra,* at 167, the respondents received damages of between $500,000 and $1.2 million despite having complained only that they suffered shortness of breath and experienced varying de-

grees of concern about cancer. This evidence of injury and the compensation awarded is recited here not "to reweigh evidence based on information not presented at trial," *ante*, at 155, n. 15, or "to judge the sufficiency of the evidence or the reasonableness of the damages awards," *ante*, at 159. Rather, it is instructive as to what results in a single case when a jury is charged with translating into dollar amounts confusing and contested evidence about the nature of a complicated harm. It demonstrates the speculative, unreasoned kind of award generated when a jury is presented vivid testimony about the agony of cancer, provided expert evidence that a person's chances of developing that cancer have increased, but admonished that only the fear of that cancer— and not the cancer itself, or a heightened risk of developing cancer—is compensable.

The majority would allow such awards, but with the "important reservation" that a plaintiff must "prove that his alleged fear is genuine and serious." *Ante*, at 157. There is no basis in our FELA jurisprudence for establishing this burden of proof, and it would be a difficult standard for judges to enforce. The Court has rejected the notion that review for "genuineness" could ameliorate the threat of unlimited and unpredictable liability. See *Gottshall*, 512 U. S., at 552. In explaining its skepticism, the Court observed:

> "Such a fact-specific test . . . would be bound to lead to haphazard results. Judges would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts. To the extent the genuineness test could limit potential liability, it could do so only inconsistently. . . . In the context of claims for intangible harms brought under a negligence statute, we find such an arbitrary result unacceptable." *Ibid.*

The Court's response to the possibility of speculative awards is instead to adopt common-law rules restricting the classes of plaintiffs eligible to seek recovery and the types of emotional distress for which recovery is available. See *ibid.;* see also *Metro-North,* 521 U. S., at 436. This is not to say that allegations of emotional distress need not be genuine and serious in order to warrant compensation, but review for genuineness alone does little or nothing to prevent capricious outcomes. Instead, the responsibility of today's Court is not to review whether an individual claim alleging fear of cancer is genuine and severe, but to adopt a rule that reconciles the need to provide compensation for deserving claimants with the concerns that speculative damages awards will exhaust the resources available for recovery.

## III

The Court, to be sure, does refer to the admonition in *Metro-North* that common-law rules must be adopted to avoid the risk of " 'unlimited and unpredictable liability.' " *Id.,* at 433 (quoting *Gottshall, supra,* at 557). Yet the rule it adopts is an unreasoned rule of limitation—a rule that does not advance the goal of ensuring that fair and sensible principles will govern recovery for injuries caused by asbestos.

The majority ends its opinion with a plea for legislative intervention, *ante,* at 166, an entreaty made before, see *Ortiz* v. *Fibreboard Corp.,* 527 U. S. 815, 821 (1999); *id.,* at 865 (REHNQUIST, C. J., concurring); *id.,* at 866–867 (BREYER, J., dissenting). This case arises under FELA, however, by which Congress has directed the courts, and ultimately this Court, to use their resources to develop equitable rules of decision. It is regrettable that the Court today does not accept that responsibility.

These reasons explain my dissent from Part III of the Court's opinion.

JUSTICE BREYER, concurring in part and dissenting in part.

I join Parts I, II, and IV of the Court's opinion. I agree with JUSTICE KENNEDY, however, that the law does not permit recovery for "fear of cancer" in this case. And I join his opinion dissenting from Part III. Because the issue is a close and difficult one, I mention several considerations that, in my mind, tip the balance.

Unlike the majority, I do not believe that the Restatement (Second) of Torts (1963–1964) (hereinafter Second Restatement) comes close to determining the correct answer to the legal question before us. Cf. *ante*, at 148–149, 154 (majority opinion). The Second Restatement sets forth a general rule of recovery for "fright, shock, or other emotional disturbance" where an "actor's negligent conduct has so caused any bodily harm to another as to make him liable for" it. § 456. But the Second Restatement neither gives a definition of the *kind* of "emotional disturbance" for which recovery is available nor otherwise states that recovery is available for *any* kind of emotional disturbance whatsoever. *Ibid.*

The underlying history underscores the openness of the legal question and the consequent uncertainty as to the answer. When Congress enacted the Federal Employers' Liability Act (FELA) in 1908, 45 U. S. C. §§ 51–60, the kinds of injury that it primarily had in mind were those resulting directly from physical accidents, such as railway collisions and entanglement with machinery. See *Consolidated Rail Corporation* v. *Gottshall*, 512 U. S. 532, 542 (1994). And (where negligent conduct was at issue) the Restatement nearest in time to FELA's enactment (and therefore presumably likely to be more reflective of the background rules that FELA then assumed, cf. *id.*, at 554–555) limited recovery for related emotional distress to concrete harm resulting from that distress. Restatement of Torts § 456 (1934) (hereinafter Restatement). In particular, this earlier Restatement restricted recovery to "physical harm resulting . . . from

fright or shock or other similar and immediate emotional disturbance" substantially caused by the underlying injury or negligent conduct. *Ibid.*

The later Second Restatement reflects subsequent court decisions that liberalized this rule—(in the earlier Restatement's words) by extending recovery beyond "physical harm" produced by "emotional disturbance," and by removing the words "similar and immediate." § 456. Linguistically speaking, these changes to the Restatement *might* reflect judicial extension of the scope of "emotional disturbance" far beyond "expectable" or "intended" fears that normally accompany, say, a collision or other machinery-related accident, Second Restatement § 905, Comment *e*, p. 458 (1977). They *might* reflect judicial extension of liability to the kind of "brooding, contemplative fear" at issue here, *ante*, at 172 (KENNEDY, J., concurring in part and dissenting in part). But they also *might* reflect more limited judicial holdings—say, holdings that extend liability to fears that arise directly from the compensable injury itself (*e. g.*, the fear of "shortness of breath," App. 298–299) or which arise directly from the conduct that caused the injury (say, the fear of inhaling asbestos fibers in a visible cloud of dust). The Second Restatement does not say.

Nor do the Second Restatement's examples resolve the problem. The most expansive example of recovery involves not worry connected with toxic torts or the like, but a considerably more restricted, directly connected worry "about the securing of shelter for [one's self] and family" after "wanto[n]" eviction—the wantonness of the eviction being a *special factor* warranting particularly broad recovery. Second Restatement § 905, Illustration 8, at 458; see also *id.*, § 905, Comment *e*, at 458.

Most important, different courts have come to different conclusions about recovery for fear of cancer itself (even when triggered by physical injury). The Restatements are not statutes. They simply reflect predominant judicial

views. And the variety of answers courts have given to the question at issue here demonstrates that courts have not reached a consensus. See *ante*, at 150–151, and n. 11 (majority opinion); *ante*, at 173–174 (opinion of KENNEDY, J.).

Given the legal uncertainty, this Court, acting like any court interpreting the common law, see *ante*, at 177 (opinion of KENNEDY, J.), should determine the proper rule of law through reference to the underlying factors that have helped to shape related "emotional distress" rules. Those factors argue for the kind of liability limitation that JUSTICE KENNEDY has described, *ibid.*

First, the law in this area has sought to impose limitations that separate valid, important emotional distress claims from less important, trivial, or invalid claims. See *Metro-North Commuter R. Co.* v. *Buckley,* 521 U. S. 424, 433 (1997). The presence of physical harm often provides a central touchstone in this regard. But that does not work here. That is because, given ordinary background risks, the increment in a person's fear of cancer due to diagnosis of a condition such as asbestosis seems virtually impossible to evaluate. See *ante*, at 178–179 (opinion of KENNEDY, J.). The evidence (viewed in the plaintiffs' favor) indicates that, for a nonsmoker, a diagnosis of asbestosis may increase the perceived risk of dying of cancer from something like the ordinary background risk of about 22% (about two chances in nine) to about one chance in three. See *ante*, at 155 (majority opinion); *ante*, at 178–179 (opinion of KENNEDY, J.). See also L. Ries et al., National Cancer Institute, SEER Cancer Statistics Rev., 1973–1999, Table I–16 (2002), available at http://seer.cancer.gov/csr/1973_1999/overview.pdf (as visited Mar. 3, 2003) (available in Clerk of Court's case file). Would a reasonable person who is not already afraid of cancer when the odds of dying are about two in nine suddenly develop a "genuine and serious" and "reasonable" fear when those odds change to one in three? Would a smoker, a risktaker whose conduct has already increased the chance of cancer death to,

say, about one in four, compare Cagle, Criteria for Attributing Lung Cancer to Asbestos Exposure, 117 Am. J. Clin. Path. 9 (2002), with Ries, *supra*, at Table I–16, and whose chance of dying of a smoking-related disease is already about 50–50, Centers for Disease Control and Prevention, Projected Smoking-Related Deaths Among Youth—United States, 45 Morbidity and Mortality Weekly Report 971 (1996), suddenly develop a reasonable, genuine, and serious fear of cancer when the chance of cancer or smoking-related death rises even further? There is simply no way to know, and it is close to impossible, in the ordinary case, to evaluate a plaintiff's affirmative answer.

Second, the law's recovery-limiting rules have sought to avoid pure jury speculation, speculation that can produce "unlimited and unpredictable liability." *Metro-North, supra*, at 433 (internal quotation marks omitted). How is the jury, without speculation, to measure compensation for the augmentation of a cancer fear from, say, two in nine to one in three? Given the fact that most of us lead our lives without compensation for fear of a 22% risk of cancer death, Ries, *supra*, at Table I–16, what monetary value can one attach to an incrementally increased fear due to a risk, say, of 30%? The problem here is not the unreality or lack of seriousness of the fear. It may be all too real. The problem is the impossibility of knowing an appropriate compensation for asbestosis insofar as its appearance tears away that veil of disregard that ordinarily shelters most of us from fear of cancer, if not fear of death itself. The majority's verdict control measures, *ante*, at 159, n. 19, will not help much in this respect.

Third, it would be perverse to apply tort law's basic compensatory objectives in a way that compensated less serious injuries at the expense of more serious harms. Yet, as JUSTICE KENNEDY points out, the majority's broad interpretation of the scope of compensable fears threatens to do precisely that. The kind of fear at issue here—a "brooding,

contemplative fear," *ante*, at 172 (opinion of KENNEDY, J.), brought about by knowledge of exposure to a substance, or of a present condition, correlated with an elevated cancer risk—is associated quite generally with negligent exposure to toxic substances. In addition to generating fear of cancer, such exposure may well produce large numbers of plaintiffs, serious injuries, and large monetary awards—all against limited funds available for compensation. And, as the history of asbestos litigation shows, such a combination of circumstances can occur despite a threshold requirement of physical harm.

In such cases, as JUSTICE KENNEDY points out, a rule that allows everyone who suffers some physical harm to recover damages for fear of correlated cancer threatens, in practice, to exhaust the funds available for those who develop cancer in the future, including funds available to compensate for fear of cancer that has actually developed. *Ante*, at 168–170. It is estimated, for example, that asbestos litigation has already consumed over $50 billion and that the eventual cost may substantially exceed $200 billion. RAND Institute for Civil Justice, S. Carroll et al., Asbestos Litigation Costs and Compensation: An Interim Report 81 (2002), Petitioner's Supplemental Lodging, p. SL82 (hereinafter RAND Institute). The costs have driven dozens of companies into bankruptcy. *Ante*, at 169 (opinion of KENNEDY, J.). They have also largely exhausted certain funds set aside for asbestos claimants—reducing the Johns-Manville Trust for asbestos claimants, for example, from a fund that promised to pay 100% of the value of liquidated claims to a fund that now pays only 5%. RAND Institute 79–80. The concern that tomorrow's actual cancer victims will recover nothing—for medical costs, pain, or fear—is genuine. Cf. *ante*, at 170 (opinion of KENNEDY, J.). And that genuine concern requires this Court to make hard choices. Members of this Court have indicated that Congress should enact legislation to help resolve the asbestos problem. See, *e. g., Ortiz* v. *Fi-*

*breboard Corp.*, 527 U. S. 815, 865 (1999) (REHNQUIST, C. J., concurring). Congress has not responded. But that lack of response does not require the courts to ignore the practical problems that threaten the achievement of tort law's basic compensatory objectives. In this case, those concerns favor a legal rule that will permit future cancer victims to recover for their injuries, including emotional suffering, even if that recovery comes at the expense of limiting the recovery for fear of cancer available to those suffering some present harm.

For these reasons, I would accept the majority's limitations on recovery, *ante*, at 157, while adding further restrictions to rule out recovery for fear of disease when the following conditions are met: (1) actual development of the disease can neither be expected nor ruled out for many years; (2) fear of the disease is separately compensable if the disease occurs; *and* (3) fear of the disease is based upon risks not significantly different in kind from the background risks that all individuals face. Where these conditions hold, I believe the law generally rules out recovery for fear of cancer. This is not to say that fear of cancer is never reimbursable. The conditions above may not hold. Even when they do, I would, consistent with the sense of the common law, permit recovery where the fear of cancer is unusually severe—where it significantly and detrimentally affects the plaintiff's ability to carry on with everyday life and work. Cf. *Ferrara* v. *Galluchio*, 5 N. Y. 2d 16, 19, 152 N. E. 2d 249, 251 (1958) (awarding damages for a psychiatrist-confirmed case of "severe cancerophobia" from a radiation burn). However, because I believe that the above limitations create a rule more restrictive than the jury charge here, *ante*, at 143 (majority opinion), and, indeed, would bar recovery as a matter of law in this case, I too respectfully dissent from Part III of the Court's opinion.